### The People *vs.* Alger.

To an indictment for the seduction of an unmarried female, under the act of 1848, the defendant interposed a special plea, alleging that at the time of the committing the acts charged, the defendant was, and for five years previous thereto had been, a married man. having a living wife and family, with which wife and family he was then living, all of which at the time of the alleged promise and seduction was well known to the said female; on demurrer to such special plea, the facts thus set up were held to constitute a good defence to the prosecution, and judgment was given for the defendant.

The defendant was indicted for the seduction of an unmarried female, under the act of 1848, entitled " An act to punish seduction as a crime."

The indictment contained three counts. The first count charged that the defendant under promise of marriage seduced and had illicit intercourse with the female, she being unmarried and of previously chaste character, following the language of the act, without setting out the promise or averring any mu-

tual promise on her part. The second count alleged that the defendant promised to marry the female, and under such promise of marriage seduced, &c., as in the first count without alleging any mutual promise on her part. The third count was substantially like the first. The defendant pleaded not guilty and also a special plea, which alleged that at the time of committing the acts charged in the indictment, he was, and for five years previous thereto had been a married man, having a living wife and family, with which wife and family he was then living, all of which at the time of the alleged promise and seduction was well known to the said female. To this special plea a demurrer was interposed. By request of the defendant's counsel and with the consent of the counsel for the people, the defendant's plea of not guilty was stricken out, and the case was argued upon the demurrer to the special plea.

*J. Gaul, Jr.,* and
*H. Hogeboom,* for the people.

*E. P. Cowles,* and
*D. D. Field,* for defendant.

JOHNSON, Justice, delivered the opinion of the court.

The special plea admits the matters alleged in the indictment to be true, as the demurrer does those set up in the special plea.

If the indictment can strictly be regarded as setting out the existence of any promise of marriage as a matter of fact, it must be held to import an absolute unconditional one, as contradistinguished from a promise depending upon some condition or contingency.

The case presented by the pleadings therefore, is that of a married man cohabiting with a lawful wife, promising unqualifiedly and unconditionally to marry an unmarried female, she knowing and understanding his situation, and under such a promise, seducing and having illicit intercourse with her

Is this the kind of promise of marriage contemplated by the act for the punishment of seduction as a crime?

The People v. Alger.

However criminal and offensive the act may be in the light of religion and morality it is the statute alone which gives it a criminal character in the eye of the law. It is to be observed that the act is not, as its title might seem to import, an act to punish seduction generally as a crime, but only when it is accomplished under certain circumstances, when the parties stand in a particular relation to each other.

Three facts must concur to render the seduction a crime under the act.

The female must be unmarried, she must be, or must at all times previously have been of chaste character, and there must be a subsisting promise of marriage.

If all these concur, then the seduction, by whatever means accomplished, is a crime and punishable as such, but in no other case and under no other circumstances. It is not necessary that the promise of marriage should be made or used as the inducement to the consent of the female, it is enough if the parties are *under promise.*

The framers of the act seem to have assumed that under such circumstances, the consent of the female might be much more readily obtained. That she confiding in the promise of future marriage, and relying upon it, would be more liable to yield to the solicitations and temptations of the man under this obligation to her, than otherwise. Hence the statute was confined to this particular class of cases. It was to protect females really standing in such a relation to a man, and confiding in his promise, from the employment of seductive arts against them by the man, and to punish him who, under such circumstances, should be guilty of violating and betraying and disappointing that confidence to the disgrace and ruin of the female, and the injury and scandal of society, that the statute was chiefly enacted.

But must the promise of marriage be mutual to bring the case within the statute? It is clear that to constitute any valid promise of marriage the promises must be mutual. Unless the obligation be reciprocal it is a nullity. It is contended by the counsel for the people, that the statute does not require this,

that if the man is under promise to the female it is immaterial whether she has ever consented or ever expects to marry him or not. The statute, it is true, taken literally, is broad enough to admit of this interpretation. And it might be carried still farther. Because, taken literally, it is not necessary that the man should be under promise of marriage to the woman he seduces. According to this, every man who was under promise of marriage to *any* woman, if he should seduce *any* unmarried female would fall within the act. But this obviously is not the spirit and meaning of the statute. It must have a reasonable construction, so as to meet the mischief it was intended to remedy, if susceptible of it. The promise must not only be to the female seduced, but there must be a corresponding one from her. Until the obligation is mutual, his declaration that he would marry the female, or was willing to marry her, is a mere declaration, or offer, and no promise, in any legal sense.

The statute is to be taken as intending a promise in its legal signification, and not a mere declaration or offer by way of temptation or allurement. This is apparent from the language employed " *under promise of marriage.*" That is, after having entered into and while under the engagement to marry.

Again, must it be a promise of a lawful marriage to bring the case within the act? It is contended on behalf of the people that this is not necessary. It may be that in a case where a married man, represented himself to the female as unmarried, and under such circumstances under promise of marriage should seduce her, the case would come within the act, although the marriage, should it be consummated, would be void. I have no doubt that it would, if the female was ignorant of the fact of his marriage and was under a mutual engagement to him. Even a marriage under such circumstances, although it would be void, would not be criminal on her part.

But take the promise presented by the pleadings, an agreement between a married man and an unmarried female to marry forthwith, at any time, without reference to the present marriage of the man, she knowing him to be at the same time law-

The People *v.* Alger.

fully married. Is this the kind of promise the legislature had in view? It can not be. It was an undertaking which if carried out would subject both parties to punishment in the state prison. The law, instead of upholding it as a marriage, would treat it as an infamous crime. To call such an engagement a promise of marriage would be a flagrant perversion of all legal sense and reasoning.

The promise I apprehend required by the act, if it be not a promise of a marriage in all respects legal and valid, when it shall be consummated according to the intention, must at least be such a promise as the law would presume the female, from the facts within her knowledge, to regard, and rely upon, as a valid marriage. Females as well as males are presumed to know the law.

It is therefore impossible to hold or to admit from the facts here presented, that this female regarded this as any promise of marriage, or could have relied upon it as such. The law presumes that every person intends the necessary and natural consequences of his or her acts and agreements.

But it is urged that this may have been a conditional promise on the part of the defendant to marry the female seduced, when he should obtain a divorce or upon the death of his wife. That such a promise would be void as against public policy I have no doubt whatever.

But it is sufficient for the purposes of this case to remark that no such question arises here. No such promise could be proved under this indictment. The promise set out is absolute and unqualified.

The facts therefore set up in the special plea, and which are admitted by the demurrer to be true in my judgment take the seduction entirely out of the statute, however much they may deepen the shades of its moral turpitude. It is not a question whether such an offence as here stands confessed ought to be punishable by law, but whether the legislature in the act before us made it so. Courts are to expound and administer and not make laws. I am inclined to the opinion that a mutual promise of marriage should be alleged in the indictment, and that it should

be substantially set out, so that the court can see that it is a valid promise. The promise of marriage is somewhat in the nature of a condition precedent to the existence of the offence. It is clearly matter of substance. I have preferred, however, placing the decision in this case upon the interpretation of the statute rather than the construction of the pleadings.

And I am clearly of opinion upon the substantial facts admitted that no offence under the act has been committed by the defendant.

Judgment for the defendant on the demurrer.