LEON G. DODGE and Others, Appellants, v. LILLIAN CAMPBELL (Calling Herself MARY ALEXANDER DODGE) and Others, as Administrators, etc., of BYRON G. DODGE, Deceased, Respondents.*

Third Department, May 23, 1930.

* Affg. 135 Misc. 644.

*Heaton & Mambert* [*John T. Norton* and *Alvin E. Mambert* of counsel], for the appellants.

*Frederick E. Draper*, for the respondents.

DAVIS, J.   The plaintiffs seek in this action to determine the status and property rights of the defendant, called by them " Lillian

Campbell," but who is known as Mary Alexander Dodge, widow of the late Byron G. Dodge. The plaintiffs are the children of the decedent by a former marriage. Their claim is that she was never legally married to their father. As no relief is demanded against the defendant bank, we will speak of the individual defendant as though she were the only defendant.

Addressing our attention first to the question of pleading — there is an allegation in the complaint that the defendant was never legally married to Dodge and was not his widow. This is denied in the answer and it is also affirmatively alleged therein that Dodge and defendant were lawfully married. This was sufficient, we think, to permit evidence to be offered and received on the subject of a common-law marriage. (*Taylor* v. *Taylor*, 173 N. Y. 266.) If plaintiffs desired further information before going to trial they could have moved to make the answer more definite and certain (Rules Civ. Prac. rule 102), or required the defendant to furnish a bill of particulars. (Civ. Prac. Act, § 247.)

It is admitted that Lillian Mary Alexander was married to John F. Campbell in the city of Lancaster, Pa., on the 24th day of June, 1893, and that they lived together as man and wife for a period of about five years. It is well established by the evidence that Campbell deserted his wife in 1898, disappeared and never returned to live with her. The wife continued to live in Pennsylvania for several years and following the desertion engaged in employment and supported herself. It is found by the trial court upon sufficient evidence that the desertion and abandonment of his wife by Campbell was willful and without just cause; that until after this action was commenced Mrs. Dodge had gained no knowledge of the whereabouts of her husband although she made diligent efforts to locate him; and did not learn that he was living but believed him to be dead.

For many years Mrs. Campbell was employed by Byron G. Dodge, first at Lancaster, Pa., and afterwards beginning about April, 1921, in the town of Berlin, Rensselaer county, N. Y., and in the city of Troy, where both established their residence. During the latter part of the year 1921 a common-law agreement to marry was entered into between Mrs. Campbell and Mr. Dodge, and thereafter they lived together as husband and wife and were generally so known and recognized. A conveyance of real property in Troy was made to her on November 1, 1921, in the name of Mary Alexander Dodge, as the wife of Byron G. Dodge, by direction and with the knowledge and consent of Byron G. Dodge; and likewise she executed a bond and purchase-money mortgage on this property. The two lived together on the property so purchased. Both were

free to make a marriage contract at this time under the laws of this State. This defendant had been deserted for a long period and had reason to believe her husband dead. The statute presently to be stated did not require that the desertion should occur in this State or that the period should run while the deserted spouse was a resident here. (See *Brower* v. *Bowers*, 1 Abb. Ct. App. Dec. 214.) A marriage performed here was not void but only voidable when such circumstances existed.

By chapter 279 of the Laws of 1922, commonly called the "Enoch Arden Act," section 7-a was added to the Domestic Relations Law. This provided a definite method of dissolving a marriage where the spouse had been absent and unaccounted for for more than five successive years. Following the enactment of that statute, Dodge and his wife, then people of late middle age, evidently desired to give greater legal sanction to their marriage relations. In March, 1924, Mrs. Dodge, under the name of Lillian Campbell, instituted a proceeding to dissolve the marriage between herself and Campbell under the provisions of section 7-a. She alleged that she was a resident of the State of New York, but evidently to avoid publicity, incorrectly and doubtless untruthfully stated her residence as being in the city of Albany. She had attempted to establish some formal residence there, and acted on the advice of counsel employed to conduct the annulment proceeding. The final order cannot be attacked collaterally, except for want of jurisdiction. The proceeding reached its termination about June 20, 1924, when an order dissolving the former marriage was entered. Thereafter in October she and Dodge were formally married by a ceremony performed by a clergyman.

Byron G. Dodge died November 1, 1925. It was not until after his death that it was discovered by the plaintiffs that John F. Campbell was still alive. The latter died June 12, 1926, in the State of Wisconsin, having been a resident of that State for a considerable period of time. Although Campbell might have acted to restore his marriage relation nothing was ever done by him to reinstate it. Everything indicates that he never had the purpose of seeing his wife again or reclaiming his marital rights. He appears here only as a mythical, sinister figure conjured up by plaintiffs for their own purposes. Of his own volition he renders them no service.

The question, as we have said, involves the matrimonial status of the defendant during the life of Dodge. There is nothing which leads us to conclude that this defendant had any knowledge whatsoever that her former husband was living during all the period following his abandonment of her. It is, therefore, not a case of a person who remarries in bad faith or without sufficient inquiry

resulting in no valid marital relation, and establishing no rights to property. (*Stokes* v. *Stokes*, 198 N. Y. 301; *Bell* v. *Little*, 204 App. Div. 235; affd., 237 N. Y. 519; *Matter of Moncrief*, 235 id. 390.) The question is rather — Did the marriage status between herself and Campbell continue to and through the period of her matrimonial relations with Dodge? It is, of course, an inconsistency and an incongruity that a woman may have two legal husbands. Prior to the adoption of section 7-a (*supra*), the Domestic Relations Law provided: "A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * * 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time." (§ 6.) "A marriage is void from the time its nullity is declared by a court of competent jurisdiction if either party thereto: * * * 5. Has a husband or a wife by a former marriage living, and such former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time." (§ 7.)

That statute in one form or another has existed in both this country and England for many years. Its purpose is well explained by FOLLETT, Ch. J., in *Price* v. *Price* (124 N. Y. 589, 596 *et seq.*). Conditions had arisen that were not tolerable. A man would desert his wife, be gone for many years, would be reported dead, the wife would remarry and if he then returned the parties might be prosecuted for bigamy, for by the canon and common law the second marriage was absolutely void *ab initio*. At first the statutes were only to relieve comparatively innocent persons from the consequences of a crime which they had no intent or purpose to commit. Then it was sought to give some semblance of stability and character to the new relation, including the usual property rights. For a hundred years now it has been permissible for the deserted spouse to marry after an unaccounted absence of the deserting spouse for five successive years. (See 2 R. S. 139, § 6.) The new marriage was voidable only. To give the elements of permanence and respectability to the new relation, when contracted in good faith, it was held long ago that cohabitation with the second husband though continued after discovery that the first husband was alive, could not be deemed adultery on complaint of the first husband in an action for divorce; that children born of the last marriage were legitimate; that if it were desired to break up the new relation and restore the former one, it was necessary to institute proceedings to annul the voidable marriage; and that before such annulment it would be both illegal and improper for the first husband to attempt to cohabit

with the wife. (*Valleau* v. *Valleau*, 6 Paige, 207.) The first marriage was held to be in abeyance and the rights of the first husband suspended until such time as the second marriage was declared void by judicial decree. (*Griffin* v. *Banks*, 24 How. Pr. 213; revd. on other grounds, 37 N. Y. 621; *Gall* v. *Gall*, 114 id. 109, 120; *Price* v. *Price, supra,* 599.) Any one of the three parties upon discovery of the fact that the first husband was still living could maintain an action for annulment. (Civ. Prac. Act, § 1134; *Stokes* v. *Stokes, supra,* p. 305.)

The subsequent discovery that Campbell was living could have had no effect upon the second marriage until an action for the annulment thereof had been brought to judgment. His neglect or acquiescence constituted a complete waiver of his rights temporarily suspended; and having failed to act in any manner to avoid the second marriage, it necessarily continued in force. After the death of Campbell it could not be disputed or invalidated by his representatives or any other party. (*Griffin* v. *Banks, supra.*) Mary Alexander Dodge is, therefore, the widow of Byron G. Dodge and entitled to her legal share in his estate in the same manner as though she had never been previously married. The rights acquired by this marriage cannot be taken away. (*American Surety Co.* v. *Conner,* 251 N. Y. 1.)

The discussion thus far has been based on the assumption that only a common-law marriage existed between Dodge and his wife. Their status would have been entirely changed and all question of doubt removed if the pre-existing marriage had been duly annulled and the order or decree stood unchallenged.

No doubt because of our decision in this same case (223 App. Div. 471) the learned trial justice declined to make any finding whatever concerning the residence and domicile of the defendant in this State subsequent to March, 1921, as related to the proceeding under section 7-a of the Domestic Relations Law to annul the Campbell marriage. The question of the validity of the proceeding was before us at that time on a motion to dismiss the complaint. In the complaint it was alleged not only that Lillian Campbell and John F. Campbell had never had a matrimonial domicile in this State but that neither had even been residents or citizens of this State, and that Lillian Campbell at the time of the commencement of the proceeding was not a resident or citizen of this State, and that, therefore, there was no jurisdiction in the courts to dissolve the marriage. Assuming, as we were compelled to do under familiar rules of practice, that these facts set up in the complaint were true, we said that under the circumstances the courts of this State had no jurisdiction to grant annulment to non-

residents. Now it appears that she was an actual and *bona fide* resident of this State after April, 1921. Having been willfully deserted and having been compelled to support herself, she possessed the matrimonial *res*, and had the right to and did bring with her the *res* of the matrimonial status into this State. (*Matter of Niemi*, 223 App. Div. 466.) As the defendant was entitled under the evidence to have these facts found, we will now, in support of the judgment, find that she was a resident of this State at the time the proceeding was instituted and the order was granted; and that the court, therefore, had jurisdiction to entertain the proceedings and grant relief. She was, therefore, free to enter into the marriage contract resulting from the ceremonial marriage on October 9, 1924.

The judgment should be affirmed, with costs.

The court makes additional findings as follows: Defendants' proposed findings of fact numbered 49, 50, 56, 57, 58, 61, and conclusion of law number 1.

HINMAN, Acting P. J., WHITMYER and HILL, JJ., concur; HASBROUCK, J., concurs on the ground only that a common-law marriage was established.

Judgment affirmed, with costs.

This court makes additional findings as follows: Defendants' proposed findings of fact numbered 49, 50, 56, 57, 58, 61, and conclusion of law number 1.