THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH MASSARO, Appellant.

Submitted April 23, 1942; decided June 4, 1942.

*Arthur N. Field* and *Anthony J. DiGiovanna* for appellant. There can be no conviction for seduction if the complainant knew or had reason to believe that the defendant was a married man at the time of the commission of the alleged offense. (*People* v. *Alger*, 1 Park. Crim. Rep. 333; *Hinkel* v. *State*, 157 Ind. 237; *People* v. *Kehoe*, 123 Cal. 224; *People* v. *Wright*, 18 Cal. App. 171; *Callahan* v. *State*, 63 Ind. 198; *Wood* v. *State*, 48 Ga. 193.)

The trial court erred in refusing to charge as to common law marriages. (*Matter of Mahel*, 153 Misc. Rep. 228.)

*William O'Dwyer*, District Attorney (*Edward H. Levine* of counsel), for respondent. The evidence presented a question of fact and not one of law. (*Kenyon* v. *People*, 26 N. Y. 203; *Crozier* v. *People*, 1 Park. Crim. Rep. 453; *State* v. *Donovan*, 128 Iowa, 44; *Boyce* v. *People*, 55 N. Y. 644; *People* v. *Orr*, 92 Hun, 199; 149 N. Y. 616; *Fearon* v. *Treanor*, 272 N. Y. 268; *People* v. *Kress*, 284 N. Y. 452; *People* v. *Kiernan*, 3 N. Y. Crim. Rep. 247; 36 Hun, 642; 101 N. Y. 618; *People* v. *Gerdvine*, 210 N. Y. 184.)

FINCH, J. Defendant has been convicted of the crime of seduction under promise of marriage (Penal Law, § 2175) and appeals to this court, alleging certain errors occurring on the trial.

Defendant, a man of forty-three at the time of the trial, went through a marriage ceremony with Mildred Massaro in 1921 when she had not yet been divorced from her first husband. The latter procured a divorce from her in 1923. Four years later defendant and Mildred Massaro had their marriage annulled. In 1940, after defendant had run afoul of the criminal law in the case at bar, he and Mildred Massaro seem to have had this decree of annulment vacated. During all this period, however, the couple continued to live together and hold themselves out to the world as man and wife, at least for certain periods of time, and they have a son, sixteen years of age, who bears the name of defendant. There is evidence, therefore, from which a jury could find the existence of a common law marriage.

The complainant, Frances Lombardo, is a woman twenty-four years of age and previously unmarried. Her sister, Mrs. Jennette Massaro, is the sister-in-law of defendant, having been married to defendant's brother for about sixteen years. Complainant testified that she had known defendant " a number of years," had visited him at his home about ten years previously, that she knew defendant and his wife had a son, and had been introduced to his wife. She further testified that at one time when she went to defendant's home, she saw his baby son in the carriage. At the same time she testified, " I did not know whether they were living together as man and wife but I knew that they never got along."

She also denied knowing that defendant and Mildred Massaro were in fact married.

At the trial defendant did not dispute the sexual relationship with complainant. His defense was that he never made any promise of marriage and that the intercourse was prompted by enticement on the part of complainant. The act of intercourse took place in the apartment of another sister of complainant, Mrs. Peruggi, after Mr. and Mrs. Peruggi had left complainant and defendant alone in the apartment. Upon returning, Mr. and Mrs. Peruggi suggested that defendant and complainant continue to spend the night together in a vacant bed in the apartment, and the latter couple fell in with the suggestion.

The trial court submitted the case to the jury upon the theory that defendant must be acquitted if complainant actually knew that he was a married man. At the same time the trial court refused to charge that the jury might find from the evidence in the case that a common law marriage existed between defendant and Mildred Massaro, and that if such marriage existed it was just as binding as a marriage formally solemnized. The court also refused to charge that there could be no conviction of defendant if, at the time of the intercourse, complainant was in possession of facts concerning his marital life from which she should have known that defendant was married. These two refusals to charge constitute the principal errors urged by defendant on this appeal.

As to the first alleged error, the following charge was requested of the court by defendant: " I respectfully request Your Honor to charge that common-law marriages were recognized as valid in 1923, and that if subsequent to the divorce obtained by the first husband of Mildred Massaro she and the defendant continued to live together over a period of seventeen years and up to and including the present day, and had one child who bears the name of the defendant, and lived together as husband and wife and held themselves out as such, that the jury may then find a valid common-law marriage existed and the parties were as validly married as if they had solemnized the marriage by a regular marriage ceremony." Proper exception was taken to the refusal so to charge.

As a general rule there can be no conviction for seduction under promise of marriage if the complaining witness had actual knowledge at the time that defendant was a married man. (*People* v. *Alger*, 1 Park. Cr. Rep. 333.) The essence of the crime of seduction is deceit and there can be no deceit when the woman has actual knowledge that the man is legally incapable of carrying out his promise of marriage. Since the attempted marriage to Mildred Massaro in 1921 was bigamous and void, the only basis upon which defendant could claim to be a married man was his living with and holding out Mildred Massaro as his wife after the impediment to a valid marriage had been removed through the divorce procured by Mildred Massaro's first husband or after the decree of annulment in 1927.

It makes no difference, however, that the evidence tends to show only a common law marriage because such a marriage, if contracted before April 29, 1933, the effective date of chapter 606 of the Laws of 1933, is just as valid as a solemnized marriage. The jury were, therefore, entitled to an instruction that they might find that a common law marriage existed between defendant and the woman with whom he was living and was holding out to the world as his wife. If they found from the evidence that such a common law marriage in fact existed, they were then in a position to go further and find that complainant, having actual knowledge of this marriage and hence knowing that defendant was not in a position to carry out his alleged promise, could not be deceived thereby.

It needs no elaboration to show that such error was material. This refusal to charge with respect to common law marriages destroyed a vital part of the defense offered by defendant and constitutes reversible error.

Another error in the trial occurred by reason of the exclusion of evidence upon cross-examination of Jennette Massaro, that no announcement was made by her that defendant was engaged to marry her sister, the complainant. Counsel for the defendant asked: " Q. Did you announce to anybody that the defendant was engaged to marry your sister? " . This question was excluded. Counsel for defendant further asked of this witness: " Q. Did anyone speak to you about this defendant being engaged to your sister? " Proper exceptions were taken to the exclusion of both of these questions.

The trial developed a sharp conflict of testimony concerning the all-important issue in the case, whether defendant had ever promised to marry the complainant. The only corroboration of the alleged promise to marry, as testified to by complainant, came from the two sisters of complainant. It thus became important for defendant to show that the acts not only of complainant but of her sisters were inconsistent with the existence of such a promise of marriage. If it was the fact that neither complainant nor her sisters announced the engagement, such fact would be of great importance in determining the truth of their testimony. It would have been most natural for complainant's sisters — and for complainant herself — to have announced this engagement and forthcoming marriage. Their failure so to do would have an important bearing on the contention of defendant that no promise of marriage on his part was ever made. In view of the closeness of the disputed question of fact as to whether defendant had ever promised to marry complainant, the error in excluding this testimony was both material and vital.

Since there must be a new trial, it is material to note that the learned trial judge was not in error when he refused to charge that there could be no conviction of defendant if the complainant should have known that defendant was a married man. The court was requested to charge as follows: " If the jury find that at the time complainant had sexual relationship with him, that she was familiar with the facts or conditions concerning the defendant's mode of life which should have led her to know or believe that the defendant was married at that time, then the jury must acquit the defendant."

The theory of defendant was apparently one of constructive notice, namely, that complainant must be held to have had knowledge, whether she did in fact or not, provided she was acquainted with facts and circumstances which would lead a reasonable woman to believe that defendant was married. Such a contention is not tenable. So to hold would deny the protection of the statute to a woman who did not in fact know she was dealing with a married man when the ordinary reasonable woman in the same position would have known the man's real status. No sound reason exists

for refusing the protection of the statute to a foolish virgin merely because a wiser one would have known better. The foregoing, of course, does not mean that a jury should not be instructed that they may find actual knowledge on the part of the woman from the evidence presented, including her familiarity with the background of defendant, his wife and family.

The judgments should be reversed and a new trial ordered.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgments reversed, etc.