In the Matter of the Estate of IDA M. OTTS, Deceased.

Surrogate's Court, Onondaga County, April 22, 1949.

*Henry D. Lucy* for James L. Otts, petitioner.

*Andrews, McBride, Abend & Pomeroy* for Frank Fischer, respondent.

MILFORD, S.   In this proceeding I am called upon to determine who inherits the estate of the decedent, Ida M. Fischer Otts. If the petitioner, James L. Otts, was her lawful husband at the time of her death, he is entitled to it; otherwise, it descends to Frank Fischer, a brother, and Doris Miles, a niece, as the sole distributees of said decedent.

The decedent died, intestate, on or about November 30, 1947, a resident of the village of Jordan, New York.

On December 4, 1947, a petition for letters of administration upon the estate of " Ida Fischer ", deceased, was duly filed in this court, alleging the decedent left her surviving, as her only distributees, Frank Fischer, a brother, and petitioner, and Doris Spaulding Miles, a niece.   Letters of administration were duly granted to the petitioner, Frank Fischer, on the said 4th day of December, 1947.   No mention of any alleged husband was made in that petition.   On the 29th day of December, 1947, a petition for letters of administration was duly filed by James L. Otts, as surviving husband of " Ida M. Otts ", deceased, in which it is alleged that James L. Otts is the surviving husband of the decedent, and further alleging that " the following persons her only next-of-kin, whose relationship to the said deceased, their places of residence and post-office addresses are respectively as follows, viz:- Frank Fischer, brother, Otisco,

New York, Doris Miles, niece, Scott, New York.'' A citation was duly issued and timely served upon said Frank Fischer, returnable January 12, 1948, at ten o'clock in the forenoon of that day, requiring the said Frank Fischer to show cause '' why Letters of Administration should not be issued to James L. Otts upon the estate of Ida M. Otts, Deceased, and why the Letters of Administration heretofore issued to Frank Fischer, on December 4th, 1947, in the Matter of the Estate of Ida Fischer should not be revoked.''

A hearing upon the application filed by the said James L. Otts was subsequently held before me, commencing on the 9th day of March, 1949, in which the petitioner, James L. Otts, claimed he was the common-law husband of Ida M. Otts, deceased, and that such status was established subsequent to January 1, 1908, and prior to April 29, 1933.

'' A common-law marriage is defined as any mutual agreement between the parties to be husband and wife *in præsenti,* especially where it is followed by cohabitation, if there is no legal disability on the part of either to contract matrimony.'' (*Matter of Wells,* 123 App. Div. 79, 82; 2 Kent's Comm. 87; *Taegen* v. *Taegen,* 61 N. Y. S. 2d 869.)

The evidence in this case discloses that James L. Otts served in World War I, and after his discharge from the service, and in 1922, he lived and maintained a home in Albany, and that Ida Fischer lived with him; that a niece by the name of Doris Spaulding Miles visited them while they were living in Albany for a period of a week, and at that time James and Ida were living and did live as man and wife; Mary VerNooy (nee Mary Otts) also visited them while they were living in Albany in 1928, and was introduced by Ida Otts to her friends as her sister-in-law; it also discloses that in 1932, a mortgage was given by the petitioner, James L. Otts, and the decedent, Ida Otts, to the Baldwinsville State Bank; that the mortgage was executed, acknowledged and given as man and wife before a Myrtle Murdough, a notary public, who is and was unrelated to any of the parties, and who was a disinterested witness. She testified that she made social calls at the home of Silas Otts, a nephew of James L. Otts, and that during one of her calls she was introduced, in the presence of several members of the Otts family, to Ida Otts as being the wife of James Otts; Silas Otts, nephew of James, testified that, in 1922 or 1923, and again after 1933, James and Ida often visited at his home staying for different periods of time varying from three days to three weeks, and that, while at his home, James and Ida

lived as man and wife, and also in 1927, at the time of the death of the witness' grandfather's second wife, James and Ida came and stayed at the home and were introduced as man and wife to various persons who called to pay their respects to the deceased. The next witness for the petitioner was Wallace Adsit, a retired United States Marshal, and mail carrier; he is unrelated to any of the parties and also a disinterested witness; he testified that in 1926, in the street in Baldwinsville James introduced Ida to Mr. Adsit as his wife, and Ida acknowledged such an introduction, and he also testified that he delivered mail to the home of Silas Otts in Baldwinsville, that he saw James and Ida there, and that Ida came to the Baldwinsville postoffice and inquired of him personally if there was any mail for James L. Otts or Mrs. Ida M. Otts.

The next witness was Mary VerNooy, nee Mary Otts, a half-sister of the petitioner. She testified that in 1922 or 1923, James brought Ida to the family home in Lysander and introduced Ida as his wife to the family, and that Ida acknowledged the introduction, and also she visited them in Albany in 1928, and was introduced to Ida's friends as " my sister-in-law ", and also in 1929, when the father of the witness died, James and Ida came to the home and stayed about three weeks, and were introduced to friends who called as man and wife, and that they lived as man and wife.

The next witness was Claire V. Fikes, unrelated and disinterested, a coal merchant in Jordan who testified that he met James and Ida in 1937, and, thereafter, he sold them coal and that James and Ida were accepted by him as man and wife.

The next witness was Harvey Stowell, also unrelated and distinterested, who testified of meeting James in the 1940's and was introduced by Ida; that he had known Ida when she was known by the name of Fischer some years previous. He testified that James and Ida came to his house in Cortland some time in the 1940's, and that Ida introduced James to him as her husband.

The next witness, Mrs. Edith Stowell, testified practically the same as did Mr. Stowell. Both of these witnesses are unrelated to the parties.

The next witness called was Doris Spaulding Miles a niece of the deceased, but was prevented from testifying by reason of section 347 of the Civil Practice Act.

The next witness was Theodore B. Miller, a teller of the First National Bank of Cortland, who testified as to a deposit in the bank in the name of Ida M. Otts.

Lester C. Norris, the undertaker, who buried the decedent, testified among other things, that the information upon the death certificate was furnished by Frank Fischer, brother of the decedent.

Next came Raymond W. Blair, assistant manager of the Merchants National Bank and Trust Company, at Jordan, New York, who testified as to a bank account in his bank in the name of Mrs. Ida Otts or James Otts.

The next witness was John H. Bachman, Republican Commissioner of Elections of Onondaga County, who testified that James Otts and Ida Otts were duly registered as qualified voters of the Town of Elbridge, and in 1944 they both duly voted.

Next witness was Dr. Charles Frederick Swift who testified that he had treated both James and Ida at their home in Jordan, and that he accepted them as man and wife.

The exhibits in the form of documentary evidence offered by the petitioner, and received by the court, were a certified copy of the death certificate; a deed from the heirs of James Otts, deceased, to James L. Otts for property in the Town of Lysander; deed from Margaret L. Birney to James L. Otts for property in Lysander; mortgage given by " James L. Otts and Ida Otts, his wife, of the Town of Lysander, N. Y.", to Baldwinsville State Bank, covering premises in the Town of Lysander, New York; nine United States Savings Bonds, Series E, in names of James L. Otts or Ida Otts; deed from Hattie B. Reynolds, Wesley B. Reynolds and Marion A. Kichenberg to Ida M. Otts of premises in the Town of Elbridge; signature card of Ida M. Otts in the National Bank of Cortland; certified copy of signature card of Mrs. Ida Otts and James Otts in Jordan branch of the Merchants National Bank and Trust Company; and the 1944 Register of Voters for the election district in which petitioner and decedent lived.

The evidence presented by the respondent in the main pertained to the personal habits of the petitioner.

It is not disputed that the petitioner imbibed to excess in alcoholic beverages, and that he did absent himself from his home for various periods of time, but I find no evidence which, in my opinion, is sufficient to find that the petitioner abandoned the decedent, nor do I find sufficient evidence to warrant a finding that petitioner failed to provide for and support the decedent.

Human relations between spouses are so complex and influenced by so many circumstances, temporary separations occur in so many instances with fault or without fault, with consent and without consent, that we deem the conclusion of fault on the

part of the person leaving the joint home too uncertain for inference alone.

Respondent stressed the importance of a letter written by Mary VerNooy to her half-brother after the death of the decedent, in which she upbraided the petitioner for his way of living.

When one is dead and the other barred from testifying because of section 347 of the Civil Practice Act, the chances of reaching a right result are slender indeed. Gloss can always be put on the attempt to litigate these issues, but the cold fact is that greed to keep or to get property, — post-mortem — or family differences are usually the motives which drag family skeletons into the light from the closets in which they were supposed to have been carefully locked and which stir up controversies within the family that ofttimes result in a feud.

Thus, as I ponder the evidence in this case I am impressed with the fact that for serious consideration I have a relationship, which apparently started in 1922, and continued practically uninterrupted down to the 30th day of November, 1947, the date of death of the decedent in this case, — a relationship which, in my opinion, was not meretricious in character. Most every witness was asked either on direct or cross examination this question, " Did you know Mr. and Mrs. Otts by any other name?", and the answer to that question was invariably, " No."

I find no evidence whatsoever which leads me to believe the cohabitation by this petitioner and the decedent was that only of lover and mistress for there is no evidence at all that petitioner abandoned the decedent for new temptation. The association began nearly a quarter of a century ago, and has endured to November 30, 1947, without serious interruption, and thereby gave unlawful lust an endurance and virtue not common or expected.

The reputation attending this cohabitation in the neighborhood where it existed and was known among those brought into its presence by relationship, business, or society, was that which ordinarily attends the dwelling together of husband and wife.

In *Hynes* v. *McDermott* (91 N. Y. 458) Judge ANDREWS says, " The presumption of marriage, from a cohabitation apparently matrimonial, is one of the strongest presumptions known to law. * * * The law presumes morality, and not immorality; marriage and not concubinage."

When a marriage has been shown in evidence, whether regular or irregular, and whatever form of the proofs, the law raises a presumption of its legality, not only casting the burden of proof on the party objecting but requiring him throughout and in every

particular plainly to make the fact appear against the constant pressure of this presumption and that it is illegal and void. (*Matter of Biersack,* 96 Misc. 161, 178.)

A nonceremonial marriage is not required to be proven in any particular manner. It is sufficient if the evidence establishes that legally competent parties *in præsenti* intended to become husband and wife, and thereafter lived and cohabited as man and wife. (*Gall* v. *Gall,* 114 N. Y. 109; *Matter of Haffner,* 254 N. Y. 238.)

After a most careful consideration of the facts and circumstances as adduced by the evidence in this case, I am of the opinion, and so hold, that James L. Otts is the surviving husband of Ida M. Otts, deceased; that the motion to dismiss the petition of James L. Otts be denied, and that the letters of administration heretofore and on the 4th day of December, 1947, duly issued to Frank Fischer upon the estate of Ida Fischer, deceased, be revoked.

Proceed accordingly.