George A. Timone, J.
In this proceeding by the petitioner for an order of support, it is conceded there was no ceremonial marriage between the parties. The pivotal issue is whether there exists a valid common-law marriage.
The petitioner and one Burker were married in May, 1920 and separated seven months later. In 1921 petitioner and respondent entered into an illicit relationship and lived together as man and wife from then until 1957. During all of this time they were residents of the City of New York and lived there continuously except for yearly summer sojourns in Massachusetts where the parties lived on the premises of respondent’s employer.
An action for a divorce, in which Seagriff was named as corespondent, was duly commenced by petitioner’s husband in the Supreme Court, Bronx County, in 1927. This resulted in an uncontested divorce decree in 1928, although petitioner and respondent did not learn of this decree until 1932. At no time did the petitioner seek a modification of the decree to permit her remarriage as she might have done after the lapse of three years from the date of its entry. Furthermore, it is probable that such an application would have been denied in view of the requirement of “ satisfactory proof that the conduct of the defendant since the dissolution of said marriage has been uniformly good ” (Domestic Relations Law, § 8).
Assuming without deciding that the parties hereto at some later time intended and actually attempted to create a common-law marriage relationship between them in New York State, they are met by insuperable obstacles. Prior to 1928, petitioner was legally married to another. After 1928 she was at all times forbidden to remarry by the divorce decree and any remarriage by her in New York State in violation of the decree would be void ab initio (Amsterdam v. Amsterdam, 56 N. Y. S. 2d 19; Polizzi v. Polizzi, 13 Misc 2d 309). In addition, by virtue of chapter 606 of the Laws of 1933, in effect April 29,1933, common-law marriages could not thereafter be established in this State.
The fact that they were known as husband and wife in the Massachusetts community in which they spent their summers *606 does not assist the petitioner. It appears that Massachusetts does not recognize common-law marriages (Commonwealth v. Munson, 127 Mass. 459; Rhodes v. Rhodes, 96 F. 2d 713; Massachusetts Gen. Laws, ch. 207, §§ 19, 38). Furthermore no marriage between these New York residents could be contracted in Massachusetts “ if such marriage would be void if contracted in such other jurisdiction (New York), and every marriage contracted in this Commonwealth in violation thereof shall be null and void” (Massachusetts Gen. Laws, ch. 207, § 11).
In the face of these impediments to a marriage either in New York or in Massachusetts, petitioner suggests that the parties entered into a valid common-law marriage in New Jersey, which permitted common-law marriages if established prior to December 1, 1939 (L. 1939, ch. 227, 37 N. J. Stat., §§ 1-10). ‘ ‘ The factors of consent, ability, present promise and cohabitation, or mutual and open assumption of marital duties and obligations, are necessary elements of a common law marriage, and the absence of any one is fatal”. (Grossman, New York Law of Domestic Relations, § 91.) Intent is the prime factor and no marriage can result without it even though other factors be present (Graham v. Graham, 211 App. Div. 580; Matter of Ziegler, 220 N. Y. 98; Gall v. Gall, 114 N. Y. 109). And the parties must then and there, that is, per verba de praesenti, promise to be and to take each other as husband and wife (Fisher v. Fisher, 250 N. Y. 313; Matter of O’Neil, 187 Misc. 832).
The common-law requirements in New Jersey are enunciated by the courts of that State as follows:
“Where there is no ceremonial marriage there must be an agreement entered into between the man and the woman, in words of the present tense, to live together as husband and wife ” (Jackson v. Jackson, 94 N. J. Eq. 233, 236).
£ £ In order to establish a presumption of a common law marriage by habit and repute, there must not only be shown cohabitation, but reputation as husband and wife. Neither reputation without cohabitation, nor cohabitation without reputation raised ‘the presumption”. (Maxwell v. Maxwell, 98 N. J. Eq. 493, 500.)
The petitioner’s testimony of the visits of the parties in New Jersey establish no more than in the course of her association with respondent “we went to Jersey a few times ” which she later increased to “ maybe three or four times a year ” in the years 1928 to 1933. These visits were no more than ordinary after dinner social calls in Jersey City at the home of a couple *607 they knew from New York. On one such occasion in 1931 or 1932, the respondent took suddenly ill and they were compelled to stay overnight pending the arrival of a car to bring him to a Brooklyn hospital. The parties never lived, never made an agreement and never cohabited in New Jersey. They were unknown in the community except to the One couple they had met in New York, on whom they made these brief and occasional social visits. To presume that these Jersey City visits somehow transformed an otherwise illicit relationship into a marriage would be indulging in fantasy.
We may sympathize with the petitioner who after performing normal wifely duties for 35 years now finds herself abandoned by respondent and not entitled to support. Such a result should not be wholly unexpected in view of the conduct of both parties in entering into an illegal and immoral relationship, and petitioner’s subsequent neglect to take the several oportunities later available to her to legalize her status. The Legislature in its wisdom has eliminated certain serious abuses by abolishing common-law marriages and by declaring void the remarriage without court permission of the guilty party to a divorce. The issue now decided by the court is not, of course, whether in all the circumstances the respondent has acted honorably, but merely that he acted legally within the public policy as determined by the Legislature. The petition is dismissed.