**Rose KELLY, Plaintiff,**

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY, sued herein as Office of Federal Employees' Group Life Insurance, Defendant.**

**No. 69 Civ. 3649.**

United States District Court,
S. D. New York.

Nov. 15, 1972.

Thomas A. Manning, Ronkonkoma, N. Y., for plaintiff; Eugene Kelly, of counsel.

Friend, Post & Hopkins, New York City, for defendant; David R. Crow, New York City, of counsel.

LEVET, District Judge.

This is an action for a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring plaintiff to be the widow of the deceased-insured, pursuant to a common-law marriage under the laws of the State of New York, and directing defendant to pay over such sums allegedly due and owing plaintiff under a policy of life insurance issued by defendant upon the life of plaintiff's deceased common-law husband.

After hearing the testimony of the parties, examining the exhibits and the Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This court has jurisdiction over the subject matter of the litigation and the parties thereto.

2. Decedent, William McGraw, a postal employee, was insured under Group Policy numbered 17000–G issued by Metropolitan Life Insurance Company to the United States Civil Service Commission, the policy holder, in the face amount of $20,000 and a certificate under Group Policy numbered 17000–G was issued to McGraw thereunder. No beneficiary was named by William McGraw. (See pretrial order stipulation.)

3. Group Policy 17000–G provides:

"* * * If, at the death of the Employee, there be no designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated Beneficiary shall be payable to the person or persons listed below surviving at the date of the Employee's death, in the following order of precedence:

"(1) To the widow or widower of the Employee; * * *." (Ex. 2.)

4. Rose Kelly (sometimes referred to as "Rose") was born in Scotland in 1900. In 1910 she came to America with her father with whom she lived until his death in 1929. In April of 1929 Rose took up residence and lived with William McGraw (sometimes referred to as "McGraw"). They lived together as husband and wife in an apartment at 548 West 40 Street, New York City. When Rose Kelly first began living with William McGraw she adopted the surname "McGraw" as her own. William McGraw supported Rose and always introduced her to his friends as his "wife." (5–9.) [1]

5. On July 11, 1934 Rose gave birth to a son fathered by William McGraw. The son was named John D. Kelly. Rose Kelly was and is a Catholic and wanted her son John to be baptized Catholic, while William McGraw, a Protestant, protested. McGraw would not consent to his son being raised a Catholic. Rose, therefore, without the knowledge of William McGraw, had the son baptized John D. Kelly. John continued to live with his parents until his marriage in 1957. (10–12, 23–25.)

6. The husband and wife relationship between Rose and William McGraw con-

---

1. Numbers in parentheses refer to the stenographic minutes of the trial before this court on October 13, 1972.

tinued until 1941 when McGraw was drafted into the Army. Rose did not see McGraw while he was in the Army; however, she communicated frequently with him by letter. (8–11.)

7. Rose and William McGraw resumed their husband and wife relationship after his discharge from the Army in 1943, taking up residence in Corona, Long Island (New York). Rose continued to live with McGraw in Corona until 1966 when she underwent a serious face operation.[2] After the operation Rose, because of her health, moved to New Milford, Connecticut. (13–15.)

8. While living in New Milford Rose continued to see McGraw. She would travel to McGraw's new residence in New York City and live with him for a period of time. In similar fashion, McGraw would go to New Milford and stay with Rose. Whenever they would visit each other they would resume their relationship as it had been before the operation. Furthermore, McGraw continued to support Rose while she lived in New Milford, paying for her rent and food. (15–17.)

9. On January 8, 1968 William McGraw died; Rose paid the funeral expenses. (18.)

10. McGraw's Army discharge papers, dated October 27, 1944, under the printed word "single" is a typed "X." This indicates that some Army clerk concluded on whatever basis that McGraw was single. There is no proof that McGraw ever read the portion in question. If he had, then, no doubt, he had some aversion to mentioning a common-law marriage, as did Rose. (Ex. D.)

11. On the death certificate of William McGraw it is stated:

"a. Name of Informant: Rose Kelly.
b. Relationship to deceased: Cousin." (Ex. A.)

Plaintiff's explanation of this statement was as follows: She spoke to the

funeral director and when he asked the relationship she told him that she was his cousin. The reason being, as Rose put it: "I was a common-law wife. I lived in a small town and I didn't want the people around to hear I was a common-law wife. So I didn't know what to put down. So I put down cousin. It was no business of theirs." (59, 60.)

At Rose's deposition on February 2, 1970 she further explained this as follows:

"* * * I was over in the undertaker parlor and the undertaker asked me was I related to the deceased because I was paying for the burial. I said, 'Yes.' There was quite a few of my friends hanging around there and talking and I didn't want to tell them that I was his common-law wife because they may ask for a certificate which I didn't have. All my friends thought I was legally married to him. That's why I put that. * * *" (Dep., Ex. C, pp. 8–9.)

I find that this false pride on the part of Rose sufficiently accounts for the untrue statement in the death certificate.

12. Exhibit 6, dated December 18, 1968, is a detailed "Application for Death Benefits" under the "Civil Service Retirement System" (a pension plan) filed by Rose Kelly. There are two entries on this application where it is stated that Rose is the "common-law" wife of William McGraw. On its face Exhibit 6 appears to have been carefully prepared and although there is no definitive proof it appears to be the work product of a lawyer.

13. Exhibit B, dated January 19, 1968 is a "Claim for Death Benefits" under the Federal Employees' Group Life Insurance Act filed by Rose Kelly. On this application it is stated: "Relationship to deceased: Cousin by marriage."

Plaintiff's explanation was as follows: A lawyer by the last name of Durling,

2. Rose testified: "Well, I had a large operation on my face and plastic surgery, and I have no nostrils to breathe with." (13.)

of Milford, Connecticut, prepared the document and Rose went to his office merely to sign it. Rose testified that she did not tell the lawyer that McGraw was her cousin; she "just gave him the paper." Rose further testified that she showed the lawyer the death certificate and that is where the word "cousin" came from. (56–58.) Thus, a misstatement on the death certificate was compounded on Exhibit B.

Unlike Exhibit 6, Exhibit B does not appear to have been prepared by a lawyer regardless of what plaintiff says. The information on Exhibit B was typed and from the surrounding circumstances may have been typed by the lawyer's secretary. To me, why the words "cousin by marriage" were used is incomprehensible. Why an attorney would fill out such a Claim for Death Benefits and insert the relationship as "cousin by marriage" is not at all clear.

In view of Exhibit 6 and the testimony of Rose I find I must disregard Exhibit B.

14. The court observed plaintiff when she testified in court. She is 72 years old. (5.) She appeared to be much older; had difficulty in hearing and much trouble in speaking, apparently from a throat abnormality. (See Finding of Fact No. 7.) She was definitely unsophisticated. Her use of the word "cousin" in the papers above mentioned was clearly a mistaken one and arose from a false impression of what a common-law marriage really was.

15. Notwithstanding the statements made in the above-mentioned documents (Exhibits A, B, D), I find that Rose Kelly was the common-law wife of William McGraw, the insured under the Federal Employees' Group policy involved here.

## DISCUSSION

The only issue involved is whether or not plaintiff was the common-law wife of decedent.

■ Common-law marriages were abolished in New York State on April 29, 1933 as the result of an amendment to Section 11 of the Domestic Relations Law. Laws of 1933, Ch. 606; In re Rizzo's Estate, Sur., 154 N.Y.S.2d 691, aff'd, 2 A.D.2d 993, 158 N.Y.S.2d 90 (1956). Common-law marriages entered into before the effective date of the amendment are as valid as a solemnized marriage. People v. Massaro, 288 N.Y. 211, 42 N.E.2d 491 (1942); In re Haffner's Estate, 254 N.Y. 238, 172 N.E. 483 (1930); U. S. Fire Ins. Co. v. Cruz, 35 Misc.2d 272, 230 N.Y.S.2d 779, aff'd, 18 A.D.2d 1137, 239 N.Y.S.2d 531 (1962).

■ The essential feature of a common-law marriage is the agreement to live together as husband and wife with the resulting obligations arising from the marriage relation. Meister v. Moore, 96 U.S. 76, 24 L.Ed. 826 (1877); Clayton v. Wardell, 4 N.Y. 230 (1850); Application of Durkin, 276 App.Div. 822, 93 N.Y.S.2d 354, aff'd, In re Wells Estate, 301 N.Y. 796, 96 N.E.2d 95 (1950); Smith v. Smith, 194 App.Div. 543, 185 N.Y.S. 558 (1920).

■ Generally, there must be a present consent *per verba de praesenti* to take each other as husband and wife, to continue until death with the resulting obligations of husband and wife. In re Apostol's Estate, Sur., 53 N.Y.S.2d 661 (1954); In re O'Neil's Estate, 187 Misc. 832, 64 N.Y.S.2d 714, aff'd, 272 App.Div. 919, 71 N.Y.S.2d 720 (1947). However, a formal contract is not necessary, for the marriage may be established by actions and the lives of the parties evidencing their understanding and intent. A common-law marriage may be proved by showing actual cohabitation as husband and wife, acknowledgment, declarations, conduct, repute, reception among neighbors and relations and the like. Gall v. Gall, 114 N.Y. 109, 21 N.E. 106 (1889); Iania v. Islip, 8 A. D.2d 897, 187 N.Y.S.2d 166 (1959); Seagriff v. Seagriff, 21 Misc.2d 604, 195 N.Y.S.2d 718 (1960); In re Heitman, 154 Misc. 838, 279 N.Y.S. 108, aff'd, 247 App.Div. 855, 288 N.Y.S. 876, aff'd, 272 N.Y. 533, 4 N.E.2d 435 (1936). A non-

ceremonial marriage is not required to be proven in any particular manner and it is sufficient if the evidence establishes that legally competent parties intended to become husband and wife and lived and cohabited as husband and wife. In re Otts Estate, 195 Misc. 344, 91 N.Y.S. 2d 616 (1949).

 The overwhelming evidence adduced at the trial clearly establishes that Rose Kelly was indeed the common-law wife of William McGraw. Beyond any doubt they commenced living together as husband and wife in April of 1929 and, with the exception of McGraw's service in the Army and their intermittent separation when Rose moved to New Milford for her health, continued to live together as husband and wife until McGraw's death in 1968. In fact, McGraw always supported Rose and introduced her to friends as his wife. Indeed, Rose bore a child fathered by McGraw. These convincing factors clearly establish a common-law marriage.

It is true that on certain documents Rose declared her relationship to McGraw to be that of a "cousin" and McGraw's Army discharge papers indicated that he was "single." However, the status of a common-law marriage is not destroyed by the mere existence of inconsistent acts or declarations by one of the parties thereto. Dodge v. Campbell, 135 Misc. 644, 238 N.Y.S. 666, aff'd, 229 App.Div. 534, 242 N.Y.S. 534, aff'd, 255 N.Y. 622, 175 N.E. 340 (1929). In any case, I find that the acts of the parties were not inconsistent with their common-law relationship.

Under all the surrounding circumstances of this case Rose Kelly was the common-law wife of William McGraw.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of the litigation and the parties thereto.

2. The plaintiff, Rose Kelly, has proved by a fair preponderance of the credible evidence that she was the common-law wife of William McGraw.

3. The plaintiff, Rose Kelly, is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring her to be the widow of the deceased-insured, pursuant to a common-law marriage under the laws of the State of New York and directing defendant to pay over such sums due and owing under a policy of life insurance issued by defendant upon the life of plaintiff's deceased common-law husband.

4. Plaintiff is entitled to a judgment with costs.

Settle judgment promptly on notice pursuant hereto.