ESTATE OF PAULA KOIBER, GERTRUD MAINZER, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ESTATE OF KOIBER v. COMMISSIONER
Docket No. 16564-80.
United States Tax Court
T.C. Memo 1983-82; 1983 Tax Ct. Memo LEXIS 701; 45 T.C.M. (CCH) 715; February 8, 1983. Robert Salomon, for the petitioner. Christopher B. Sterner, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined a deficiency of $40,335.82 in the Federal estate tax for the Estate of Paula Kloiber *702 (decedent). After concessions, the remaining issues are (1) whether respondent properly included the full value of two parcels of real property in decedent's gross estate, and (2) whether decedent's gift of certain stock to her daughter was made in contemplation of death. General Facts
The facts have been fully stipulated and are so found. Decedent died on March 9, 1977. Petitioner Gertrud Mainzer, executrix of decedent's estate, resided in New York, N.Y., when the petition was filed herein. In 1912, decedent's husband, Franz Kloiber (Franz), married Theresia Kremoser (Theresia) in Austria. Within three years, Franz immigrated to the United States leaving Theresia in Austria. On September 11, 1917, Franz and decedent were ceremonially married in a Roman Catholic Church in the State of New York. Sometime during 1922 through 1924, Theresia obtained a formal divorce from Franz in Austria. On August 10, 1933, Franz and decedent were once again ceremonially married in New York. From the date of their first ceremonial marriage in 1917 until Franz's death in 1968, decedent and Franz lived together in Southfields, N.Y. Their daughter Mary was born in 1918, and their *703 son Franz, Jr. was born in 1922.
The Parcels
On May 16, 1928, two parcels of real property located in New York (herein sometimes separately referred to as Parcel I and Parcel II) were conveyed by separate deeds to Franz and decedent as "husband and wife". The deeds were properly recorded on May 17, 1928. Franz died on March 3, 1968. In his last will and testament, Franz attempted to devise various portions of the parcels to Franz, Jr. and Mary. Subsequent to Franz's death, deeds were recorded indicating that Franz, Jr. held title to various portions of Parcel I and that both Franz Jr. and Mary held title to various portions of Parcel II. On March 13, 1975, Farmers Production Credit Association (Credit Association) commenced an action in New York to foreclose a mortgage of $75,908.06 on Parcel I, and to recover interest and attorney's fees resulting therefrom. Credit Association alleged that on March 22, 1974, Franz, Jr. and his wife Muriel executed the mortgage to secure a promissory note in the face amount of $70,000 which they allegedly executed on or about the same day. By their answer and counterclaim, decedent and Franz, Jr. asserted that "a person or persons *704 unknown had forged Franz, Jr.'s signature on the mortgage", demanded dismissal of the complaint, and asserted a claim against Credit Association for actual and punitive damages. On July 13, 1978, more than one year after decedent's death, the lawsuit was dismissed "on the merits". At decedent's death, the parties have stipulated that Parcel II had a fair market value of $95,200 and, without taking into account the impact of the lawsuit, Parcel I had a fair market value of $90,400. Petitioner included no part of the value of Parcel I and included only one-half of the value of Parcel II in decedent's gross estate. In his notice of deficiency, respondent included the full value of both Parcel I and Parcel II in the gross estate. The issue is whether respondent properly included the full value of both Parcel I and Parcel II in the value of decedent's gross estate. Section 2033 [1] provides that the value of the gross estate shall include the value of all property to the extent of the decedent's interest therein at the time of his death. Petitioner asserts that decedent owned only a one-half interest in both parcels at the time of her death. Petitioner further argues that on the *705 date of decedent's death any interest which decedent may have owned in Parcel I was valueless because there was pending an action to foreclose a mortgage on such parcel. Respondent counters that decedent was the sole owner of both parcels and that the foreclosure action had no impact on the value of decedent's interest in Parcel I because on the date of decedent's death it was clear that such action was groundless. Whether decedent was the sole owner of both Parcel I and Parcel II at the date of her death depends upon whether decedent and Franz were legally married when the parcels were conveyed to them as "husband and wife" in 1928. [2] If decedent and Franz were legally married at such time, then decedent would have succeeded to the entire interest in both parcels upon the death of Franz since the parcels would have been held by decedent and Franz as tenants by the entirety. [3] If decedent and Franz were not legally married at such time, then decedent would have owned only a one-half interest in both parcels upon the death of Franz since the parcels *706 would have been held by decedent and Franz as tenants in common. [4]
Whether decedent and Franz were legally married in 1928 is a question which must be analyzed under state law. Commissioner v. Estate of Bosch,387 U.S. 456 (1967). At all relevant times, decedent and Franz were residents of New York. Under New York law, the ceremonial marriage in 1917 was invalid because Franz was still married to Theresia at the time. See In re Haffner's Estate,254 N.Y. 238, 172 N.E. 483 (1930). Respondent contends, however, that after Theresia obtained a divorce from Franz sometime between 1922 and 1924, decedent *707 and Franz became husband and wife by common-law marriage. Based on the following discussion, we agree with respondent. From 1908 through 1933, common-law marriages were legally recognized in New York. In re Estate of Benjamin,34 N.Y.2d 27, 355 N.Y.S.2d 356 (1974). To establish a common-law marriage, it was sufficient that the parties intended to become husband and wife and thereafter lived as husband and wife. Kelly v. Metropolitan Life Insurance Company,352 F. Supp. 270 (S.D. N.Y. 1972). In Haffner's Estate,supra, the parties were ceremonially married at a time each had an undivorced living spouse. Nevertheless, the court held the parties became husband and wife by common-law marriage after the parties obtained divorces from their former spouses because the parties continued to live together as husband and wife. Since we find no significant difference between the facts in Haffner's Estate and those in the case before us, we find decedent and Franz became husband and wife by common-law marriage after Theresia obtained a divorce from Franz. [5] See also Kelly v. Metropolitan Life Insurance Co.,supra. *708 Accordingly, decedent succeeded to the entire interest in both parcels upon the death of Franz since the parcels were held by decedent and Franz as tenants by the entirety; thus, decedent was the sole owner of both parcels on the date of her death. See n. 4, supra.
*709 The next question to be resolved is whether the pending action to foreclose a mortgage on Parcel I had any impact on the value of decedent's interest in such parcel. [6] Petitioner argues that because of the pending foreclosure action no buyer would have purchased Parcel I on the date of decedent's death and, therefore, decedent's interest in such parcel was valueless. Respondent counters that the foreclosure action had no impact on the value of decedent's interest in Parcel I because it was obvious on the date of decedent's death that such action was without merit. Valuation of decedent's interest in Parcel I for purposes of the gross estate must be based on events extant on the date of decedent's death. Ithaca Trust Co. v. United States,279 U.S. 151 (1929). The value of the interest is the price at which it would have changed hands between a willing buyer and willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant *710 facts. Sec. 20.2031-1(b), Estate Tax Regs. Significantly, although an action to foreclose a mortgage on Parcel I was pending on the date of decedent's death, Credit Association admitted in its pleadings that decedent owned at least a one-half undivided interest in Parcel I and yet had not executed the mortgage. Thus, even if the mortgage had been enforced against Parcel I, by Credit Association's own pleadings it was apparent decedent would still have owned at least a one-half undivided interest in Parcel I or would have been entitled to receive one-half of any proceeds resulting from a foreclosure sale. Thus, we reject petitioner's contention that decedent's interest in Parcel I was valueless on the date of her death. Furthermore, on the date of decedent's death there was substantial doubt as to the enforceability of the mortgage on Parcel I. In addition to the fact that decedent did not execute the mortgage, decedent and Franz, Jr. answered Credit Association's complaint by asserting that the mortgage was nothing but a forgery. Although we recognize the uncertainty of determining the effect the foreclosure action had on the value of decedent's interest in Parcel I, we conclude *711 that on the date of decedent's death a willing buyer, having reasonable knowledge of all relevant facts, would have paid $75,000 for decedent's interest in Parcel I. Thus, petitioner must include in decedent's gross estate $75,000 as the value of such interest. [7]
II. The Stock
Decedent was the sole owner of the house in which she lived with her daughter Mary and son-in-law Walter after the death of her husband in 1968 until her own death in 1977. On February 23, 1976, decedent made a gift of certain stock to Mary. It was the only gift made by decedent during the period from 1957 until her death in 1977. In addition to the house and the parcels, the stock *712 represented the only significant asset which decedent owned. In the original Federal estate tax return, petitioner included $26,098 as the value o the stock. In his notice of deficiency, respondent included $28,204. Now petitioner claims the stock should not be included in the estate because it was not gifted in contemplation of death. [8]
The issue is whether decedent made the gift of stock to her daughter in contemplation of death so as to require inclusion of the value of the stock in decedent's gross estate.[9] See sec. 2035. The basic test is whether decedent's motive in making the gift was for purposes associated with life or whether the thought of death was the impelling cause of the transfer. Inited States v. Wells,283 U.S. 102 (1931); Estate of Himmelstein v. Commissioner,73 T.C. 868 (1980); Estate of Johnson v. Commissioner,10 T.C. 680 (1948). *713 Since decedent was 89 years old and had no prior history of gift-making when she made the gift to her daughter, it seems likely the thought of death was the dominant factor in her decision to make the gift. See Estate of Gerard v. Commissioner,57 T.C. 749 (1972), affd. per curiam 513 F.2d 1232 (2d Cir. 1975). Such a conclusion is also supported by the fact that the stock represented a substantial portion of decedent's estate. See Estate of Johnson,supra.Furthermore, when a gift is made, as here, to a donee who is a natural object of the transferor's bounty, such relationship is probative of the conclusion that the transfer was a substitute for a testamentary disposition rather than the result of a motive associated with "life". See Estate of Hite v. Commissioner,49 T.C. 580 (1968). Petitioner contends the gift was made to reward the daughter and son-in-law for allowing decedent to make her home with them. However, the fact that the daughter and son-in-law lived rent free for several years at decedent's house strikes us as reward enough for providing decedent a home. Accordingly, we conclude decedent made *714 the gift of stock to her daughter in contemplation of death; thus, petitioner must include in decedent's gross estate the value of the stock on the date of decedent's death. To reflect concessions and the foregoing, Decision will beentered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death.↩
2. Petitioner does not dispute that the parcels would have been held by decedent and Franz as tenants by the entirety if they were legally married when the parcels were conveyed to them. ↩
3. If decedent and Franz held the parcels as tenants by the entirety, decedent would have succeeded to the entire interest in both parcels by operation of law and no effect would be given to Franz's attempted devise under his last will and testament. ↩
4. The parties agree nothing happened after the death of Franz to alter decedent's interests in the parcels.↩
5. Petitioner erroneously relies on Iania v. Town of Islip,8 A.D.2d 897, 187 N.Y.S.2d 166 (1959), in support of his assertion that decedent and Franz were not legally married in 1928. Iania involved a workmen's compensation proceeding for widow's benefits. The issue was whether the claimant and the decedent established a common-law marriage despite the fact that the claimant never obtained a divorce from her "former" husband who was still living. Under authority of Section 6 of the New York Domestic Relations Law, the court stated that a marriage is void when one of the parties has an undivorced living spouse even if such spouse has been "missing" for several years. The court explained that after 1922 a party with a "missing" spouse could become legally married again only if the first marriage was dissolved pursuant to a judicial determination that such spouse had been "missing" for at least five years. Iania clearly does not apply here since there is no "missing" spouse. Franz, unlike the claimant in Iania,↩ did obtain a divorce from his former spouse and, thus, there was nothing preventing Franz and decedent from establishing a common-law marriage thereafter.
6. Petitioner does not dispute that the full value of Parcel II must be included in the gross estate if, as we have determined herein, decedent was the sole owner of such parcel.↩
7. Respondent does not assert that the value of any claim for reimbursement decedent may have had against the person who executed the mortgage, or the value of any claim decedent may have had against Credit Association arising out of the foreclosure action, s includable in the value of decedent's gross estate. Thus, it is unnecessary for us to determine whether any such potential claims had any impact on the value of decedent's gross estate. See Commissioner v. Wragg,141 F.2d 638↩ (1st Cir. 1944).
8. Once a notice of deficiency is mailed and the taxpayer files a petition, this Court retains jurisdiction to determine the amount of an overpayment of tax if it finds there is no deficiency. See sec. 6512(b).↩
9. Petitioner has stipulated that the fair market value of the stock was $28,204 on the date of decedent's death.↩