OPINION. Kern, Judge: The sole question is whether the value of the transfers of March 3,1939, should be included in the gross estate of the decedent according to the provisions of section 811 (c) of the Internal Revenue Code.[1] The ultimate question to be decided in this case, as in others arising under the quoted statute, is whether the dominant or impelling motive of decedent in making these transfers was associated with death and was prompted by the thought of death. This question is a subjective one. It concerns the motives and mental processes of a particular human being, in this case one Oliver Johnson, who made the transfers in question more than 10 years before the hearings were held in this proceeding and who died more than 4 years before those hearings. Among the circumstances to be considered and weighed in determining what was the dominant motive of the decedent,in making inter vivos transfers of his property, are the following: (a) The age of the decedent at the time the transfers were made; (b) the decedent’s health, as he knew it, at or before the time of the transfers; (c) the interval between the transfers and the decedent’s death; (d) the amount of the property transferred in proportion to the amount of property retained; (e) the nature and disposition of the decedent, e. g., whether cheerful or gloomy, sanguine or morbid, optimistic or pessimistic; (f) the existence of a general testamentary scheme of which the transfers were a part; - (g) the relationship of the donee or donees to the decedent, i. e., whether they were the natural objects of his bounty; (h) the existence of a long established gift-making policy on the part of decedent; (i) the existence of a desire on the part of the decedent to escape the burden of managing property by transferring the property to others; (j) the existence of a desire on the part of the decedent to vicariously enjoy the enjoyment by the donees of the property transferred; and (k) the existence of the desire by the decedent of avoiding estate taxes by means of making inter vivos transfers of property. This is not a comprehensive list of the circumstances pertinent to the problem of what transfers are made in contemplation of death, but it includes most of the circumstances and considerations pertinent to the instant case. Of these circumstances, some are favorable to respondent’s contentions that the transfers were made in contemplation of death, and some are favorable to the position of petitioner that decedent’s motives in making the transfers were associated with life rather than with death. Those circumstances which tend to indicate that decedent’s motives in making the transfers were associated with death are as follows: (a) The advanced age of decedent when he made the transfers; (b) the amount of the property transferred by decedent in proportion to the amount of property retained by him; and (c) the fact that the donees were all the children of decedent, the natural objects of his bounty and the legatees in his subsequently executed will. The circumstances which tend to indicate that decedent’s motives were associated with life are as follows: (a) Decedent’s health at or before the time of the transfers was good; (b) decedent’s nature and disposition were cheerful, sanguine, and optimistic; (c) there was an interval of four years between the time of the transfers and the time of decedent’s death; (d) there was at the time of the transfers no testamentary scheme on the part of decedent, decedent’s only will (so far as the record discloses) having been made four months after the transfers; (e) the decedent had over a long period of time made gifts to the same donees and in the same proportions as to each other; and (f) the decedent desired to escape the burdens incident to the management of the properties transferred. The evidence is not compelling as to two pertinent circumstances; viz, the desire of the decedent to derive pleasure from the enjoyment by his children of the property transferred to them, and his desire to save estate taxes by such transfers. The record as a whole, however, justifies the inference that decedent did derive pleasure from the enjoyment by his children of the property transferred to them, and that decedent was in no way interested in the saving of estate taxes. With regard to the three circumstances which tend to favor respondent’s contention, two of them are subject to minimizing qualifications. While the amount of the property transferred by decedent was large in proportion to the amount retained by him, nevertheless, the amount of property retained was enough in his judgment to support him in the frugal manner of living to which he was accustomed and which he evidently preferred. While the donees were his children and, as such, the natural objects of his testamentary bounty, they were also for the same reason the natural objects of his donative bounty. With regard to the circumstances tending to favor petitioner’s contention, many of them are subject to amplification. For example, to say that decedent’s health was good seems inadequate in view of the testimony concerning his health given by respondent’s own witness, a chiropractor who gave treatments to decedent over a period of approximately a month in 1938 or 1939. He testified that decedent was “wonderfully preserved for a man of his age,” that “he didn’t look his age by 12 or 15 years,” that he was “a jolly old fellow,” very alert and very spry, that he was active and carried himself like a young man, that after his treatments “his troubles seemed to be all over,” and that he said “he was going to be here a long time.” It is impossible to read the record here without concluding that the decedent in 1939 was, and had been, in extraordinarily good health; and, further, that he took an almost childish pride in his health and vigor. The evidence is also most convincing in regard to decedent’s, desire to escape the burdens incident to the management of the properties transferred. The testimony of decedent’s children that he had on several occasions made statements that he did not like the care of rental properties and wished to give them away as soon as he could clear the properties from liens is credible in the light of the facts. A retired farmer, 85 years old, enjoying his old age in Southern California, who was suddenly faced during the depression years with the necessity of managing a substantial number of rental properties and thus sacrificing his horseshoe pitching and woodwork, would most naturally have a desire to get rid of this unwanted responsibility as soon as he felt it possible for him to do so. Having gone through the vexing and trying experience of managing a large number of rental properties for some five years, it was natural for him to feel a revulsion against a continued responsibility for any rental property and to add the few rental properties which he had acquired prior to 1932 to the properties which he desired to transfer. And his decision in 1939 to include in the transfers of properties his farms in Kansas was consistent with a desire to shed responsibilities and concentrate on the pleasure of living. For a man 90 years of age to prefer to remain in Southern California with his family and his hobbies rather than to go during the summer months to the Kansas wheat country is a decision which would more reasonably result from considerations in regard to a pleasant place for living than from considerations in regard to death. Certain evidence indicates that the children of decedent desired him to make the transfers in question. It is quite possible that their motives in desiring him to do so were associated with his death and were caused by their contemplation of his death, but their motives are irrelevant unless it is shown that decedent’s will was substantially subordinated to theirs. The record indicates, however, that decedent’s will was independently his. Were it not for the decedent’s advanced age at the time of the transfers here in issue, we would have little difficulty in concluding that the transfers were not made in contemplation of death. The one evi-dentiary circumstance as to which respondent stands on firm ground is that decedent at the time of the transfers was an old man, indeed an unusually old man. It may be that the norm for the consideration of the mind and motives of a man 90 years of age is that of a man weakened by senility and subject to the continual and unmistakable physical intimations of approaching disintegration, with a consequent concentration on the spiritual and material problems posed by death. If that is the norm, then we are convinced by the evidence before us that the decedent was not normal. The record in this case portrays an old man of far different characteristics. He was an old man of amazing vigor who enjoyed “showing off” that vigor to his children and friends (frequently to their annoyance). He was alert and independent, cheerful, and interested in living, and, above all, proud of his vitality and comparative youthfulness. This portrait may not be an accurate likeness of the real Oliver Johnson. It is possible that the verbal picture of Oliver created at the trial by the testimony of witnesses brought out by the skillful guidance of petitioner’s counsel emphasized certain of his features and left others in shadow to the extent that the Oliver Johnson of the verbal portrait has more resemblance to a synthesis of decedents whose transfers had been held in many reported cases to have been made not in contemplation of death than to the real Oliver Johnson who transferred real estate in Southern California on March 3, 1939. But the judicial process requires that we create our image of Oliver from the material in the record before us. We can not be certain that our portrait of Oliver is a lifelike replica of the real Oliver, but we are confident that it accurately reflects the portrait of Oliver drawn by the evidence in this record. When old age has brought with it to a decedent the normal results, that is, physical illnesses and mental preoccupation with mortality, old age may be a decisive test in determining whether transfers made by the decedent were prompted by the thought of death. But where old age has not brought with it to a decedent these normal results, “* * * age in itself can not be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than death, may motivate the transfer.” United States v. Wells, 282 U.S. 102. To quote again from the Wells case: If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * As illustrating transfers found to be related to purposes associated with life, rather than with the distribution of property in'anticipation of death, the Government mentions transfers made “for the purpose of relieving the donor of the cares of management or in order that his children may experience the responsibilities of business under his guidance and supervision.” The illustrations are useful but not exhaustive. The purposes which may be served by gifts are of great variety. It is common knowledge that a frequent inducement is not only the desire to be relieved of responsibilities, but to have children, or others who may be the appropriate objects of the donor’s bounty, independently established with competencies of their own, without being'compelled to await the death of the donor and without particular consideration of that event. There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death. In the instant case we have concluded from all the evidence that in spite of decedent’s unusually advanced age the dominant and impelling motive of decedent in making the transfers here involved was not the thought of death, but was the desire to escape the burdens incident to the management of the properties transferred. Therefore our decision on the issue submitted is that the transfers were not made by decedent in contemplation of death. Reviewed by the Court. Decision will be entered under Bule 50. Van Fossan, Murdock, and ArNold, //., concur only in the result. Turner, /., dissents. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the united States— [[Image here]] (c) Transfers in Contemplation of, or Taking Effect at Death. — To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * * except in case of a bona fide sale for an adequate and full consideration in money or money’s worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this BUbchapter.