Estate of Samuel R. Penney, Deceased, Samuel R. Penney, Jr., Executor v. Commissioner.
Estate of Samuel R. Penney v. Commissioner
Docket No. 28813.
United States Tax Court
1952 Tax Ct. Memo LEXIS 254; 11 T.C.M. (CCH) 379; T.C.M. (RIA) 52111; April 17, 1952
*254 1. Transfer in trust held not to have been made in contemplation of death within the meaning of section 811 (c) (1) (A), Internal Revenue Code. 2. Value of stock in family-held corporation determined. Sidney W. Thaxter, Esq., for the petitioner. Lester H. Salter, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $11,079.97 in the petitioner's estate tax liability. The petitioner contests that part of the deficiency resulting from the inclusion of property transferred by an inter vivos trust in the decedent's gross estate as a transfer made in contemplation of death. Petitioner also contests the valuation assigned by the respondent to the capital stock of J. W. Penney & Sons Company which was part of the decedent's gross estate. All stipulated facts are found as stipulated. Findings of Fact The petitioner is an individual residing in Mechanic Falls, Maine. He is the duly appointed, qualified and acting executor of the last will of Samuel R. Penney, deceased. The estate tax return was filed with the Collector of Internal Revenue for the District of Maine. *255 The petitioner elected to have the gross estate of the decedent valued in accordance with values as of February 5, 1947. Samuel R. Penney, hereinafter referred to as the decedent, died on February 5, 1946, 17 days before his 88th birthday. He died at his home in Mechanic Falls, Maine, of bronchial pneumonia after an illness lasting 12 days. On June 3, 1943, the decedent irrevocably transferred in trust cash and securities and paid a gift tax thereon. The trust provided for the accumulation of income for five years after the date of its execution and the termination of the trust 20 years after that date unless sooner terminated by the beneficiaries. The principal beneficiary was the decedent's son, Samuel R. Penney, Jr., who had the right, after the expiration of the five-year period, to receive the income, or terminate the trust and receive the principal and income. If the son, Samuel R. Penney, Jr., died "before the termination of the trust and the expiration of twenty years", his rights to receive income and principal and terminate the trust passed to his wife and sons in equal shares. If either son of Samuel R. Penney, Jr., died before the termination of the trust leaving issue, *256 the issue took the share and right of the deceased parent by right of representation. The trust instrument contained a spendthrift trust provision. The property transferred in trust had a value of $46,803.84 on June 3, 1943, which represented approximately one-third of the property owned by the decedent at that date. The decedent during his lifetime had been in the habit of making gifts to his son and his son's family. Over a period of 20 years, from 1920 to 1940, he gave his son 347 of the 400 shares of capital stock outstanding in the J. W. Penney & Sons Company. From 1936 until his death, decedent made gifts of securities to his son amounting to approximately $10,000. In addition, he gave $7,000 worth of securities to the wife of Samuel R. Penney, Jr., and $5,000 in securities as an educational fund and approximately $6,450 in cash payments on paid-up life insurance policies to each of the two sons of Samuel R. Penney, Jr. The decedent was 85 years of age at the time he executed the trust instrument. At that time and until a few weeks before his death, he suffered only from minor ailments. Since about 1925 he had an irregular heart condition. For many years the decedent followed *257 the practice of regularly visiting his physician for examinations. Until a few weeks before his death, the decedent led an active life. He visited the family-owned manufacturing plant daily from 7:00 a.m. until noon and sometimes returned in the afternoon. He was an ardent fisherman, enjoyed traveling, and contemplated trips to such places as Quebec and Florida He enjoyed life, looked forward to and planned for the future and possessed a cheerful disposition. The transfer in question had been considered in detail by the decedent for about two or three years prior to the execution of the trust at a time when the corporation first accepted war contracts. At that time he discussed the transfer with his family, attorney, accountant, and trust officer of the bank which was thereafter named as trustee. The transfer of the property in trust without retention of power to alter, amend or revoke was made to lessen the likelihood of its being used to finance the operation of the family-owned corporation. At the time the transfer was made, the corporation was expanding its operations because of war contracts. The decedent was of the view that the funds needed to finance the expanded operations *258 should be obtained from bank loans. The additional funds needed to finance the war-time expansion of the corporation were obtained from a bank loan and from Government advances. In prior years some member of the family, usually the decedent, would resort to his own personal funds whenever the corporation was in need of additional capital. The decedent executed his will on February 10, 1933, and no change was ever made except that in 1939 a codicil was added naming a successor executor and trustee in place of a bank that had been liquidated. Under his will, the decedent devised his entire estate to his son if the son survived him. The son was directed to set apart out of the sum received and hold in trust $10,000 for each of the decedent's grandchildren and, if the decedent's son pre-deceased him, the entire estate was to be placed in trust for the benefit of the decedent's grandchildren. The decedent's transfer in trust on June 3, 1943, was made with a purpose associated with life rather than death and was not made in contemplation of death. The decedent's gross estate included 51 shares of common stock of the J. W. Penney & Sons Company which had a book value of approximately *259 $275 a share on February 5, 1947. The fair market value of these shares on February 5, 1947, was not less than $240 a share. Opinion ARUNDELL, Judge: The principal question is whether the decedent's inter vivos transfer in trust on June 3, 1943, was made in contemplation of death within the meaning of section 811 (c) (1) (A). Internal Revenue Code. * The transfer was made when the decedent was 85 years of age and was for the benefit principally of his son and the wife and children of his son. The decedent died approximately 2 1/2 years later on February 5, 1946, just 17 days before his 88th birthday. The property transferred was approximately equal to one-third the value of the decedent's estate at the time of the transfer. *260 Although the decedent, because of his age, may properly be regarded as an "old" man, he was active and possessed a cheerful outlook on life. He visited his office daily, enjoyed such hobbies as fishing and traveling, and maintained a congenial disposition that won him the esteem of his family and employees. Cf. Estate of Oliver Johnson, 10 T.C. 680. His ailments were not unusual. His irregular heart condition had existed since about 1925 and his visits to a physician were part of a routine practice he had followed for many years. In short, his health was good for a man of his age and was not such that we could easily infer that the decedent must have been contemplating death at the time of the transfer. The gift in trust, principally for the benefit of his son and the wife and children of his son, was in harmony with the decedent's long-established practice of making gifts to them. Cf. United States v. Wells, 283 U.S. 102. Beginning about the year 1920, the decedent began making gifts of capital stock of the family-owned corporation to his son and by the year 1940 he had given him 347 of the 400 shares outstanding. In addition to these shares of stock, *261 the son and his family received from the decedent other gifts during this period totaling approximately $40,000. The amount of the total gifts made by the decedent to his son and the family of his son during the period 1920 to 1940 was far in excess of the value of the property transferred in trust on June 3, 1943. Furthermore, the decedent's motive for the transfer in question was a motive associated with life. The transfer had been considered in detail by the decedent for about two years prior to the execution of the trust at a time when the corporation first accepted war contracts. The matter of the transfer was discussed at that time with his family, attorney, accountant and the trust officer of the bank which was thereafter named as trustee. The irrevocable transfer of the property in trust to lessen the likelihood of a call on the decedent to risk his property in financing the war-time expansion of the corporation was finally carried out in 1943. Theretofore, some member of the family, usually the decedent, had resorted to personal funds to supply the corporation's needs. The decedent was of the view that the war-time expansion should be financed by bank loans, and the corporation *262 did in fact borrow from a local bank to meet the needs of its wartime expansion. After carefully considering the evidence referred to by the respondent, together with all other evidence contained in the record, we have concluded that the transfer in trust on June 3, 1943, was motivated by purposes associated with life and was not made in contemplation of death within the meaning of section 811 (c) (1) (A) of the Code. United States v. Wells, supra. A second issue relates to the value of the capital stock of the family-owned corporation on February 5, 1947, the optional valuation date elected by the petitioner under section 811 (j) of the Code. The shares had a book value of approximately $275 per share. The respondent has determined the shares had a fair market value of not less than $240 a share at that date. After considering the book value and other evidence of value, including the average earnings of the corporation, we are of the view that the fair market value on February 5, 1947, was not less than $240 per share. Decision will be entered under Rule 50. Footnotes
*. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(c) Transfers in Contemplation of, or Taking Effect at, Death. - (1) General Rule. - To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise - (A) in contemplation of his death. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; * * *
The statutory presumption contained in this section is not applicable since the decedent's death occurred approximately 2 1/2 years after the transfer.↩