Estate of George M. Spiegle, Deceased, Ralph G. Spiegle, Administrator De Bonis Non v. Commissioner.
Estate of George M. Spiegle v. Commissioner
Docket No. 25541.
United States Tax Court
1952 Tax Ct. Memo LEXIS 67; 11 T.C.M. (CCH) 1004; T.C.M. (RIA) 52299; October 16, 1952
*67 Upon the record it is held that the value at the time of death of decedent of certain property transferred by him in trust is not includible in his gross estate under Section 811 (c) and (d) (2), Internal Revenue Code. It is further held that the value of the residence property conveyed by deed by decedent to his daughter nine years prior to his death is not includible in his gross estate as a conveyance made in contemplation of death or to take effect in possession and enjoyment after death. Robert A. Detweiler, Esq., and George H. Detweiler, Esq., 2518-27 Lewis Tower Bldg., Philadelphia, Pa., for the petitioner. John D. Armstrong, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion *68 BRUCE, Judge: Respondent has determined a deficiency in estate tax in the sum of $59,324.42. The issues are: (a) whether the value at the time of the death of the decedent of property transferred by him in trust, which trust was later amended, is includible in the gross estate of the decedent under the provisions of section 811 (c) and (d) (2) of the Internal Revenue Code; (b) whether or not, in the event that the value of the trust property be held includible in decedent's estate, the respondent erred in including in such value investments representing undistributed income of the trust accumulated by the trustee and invested for the account of the beneficiaries; (c) whether the value of a residence property conveyed by the decedent by deed to his daughter nine years before his death is includible in his gross estate under the provisions of section 811 (c) of the Internal Revenue Code. Certain of the facts were stipulated and are so found. Additional facts hereinafter set out are found upon testimony and exhibits introduced on the hearing. Findings of Fact The decedent, George M. Spiegle, died intestate July 26, 1945, at the age of *69 83, leaving an estate of over one million dollars, two adult children, Ralph G. Spiegle and Mima M. Spiegle, and two grandsons, the children of Ralph G. Spiegle, namely, George Hartman Spiegle, born June 8, 1923, and Robert Donald Spiegle, born March 9, 1925. On January 18, 1928, the decedent executed a trust agreement conveying to The Real Estate-Land Title and Trust Company of Philadelphia, Pennsylvania, and himself, as trustees, approximately $100,000 in corporate interest-bearing securities, to be held by such trustees and the income therefrom to be used, if and when directed by the grantor and his son and daughter aforementioned, for the maintenance and education of his two small grandsons. Any income realized and not used for the stated purposes was to be invested by the trustee for the account of the two beneficiaries, they to each receive, when 21 years of age, his one-half share of such accumulated income, and at 25 years of age each beneficiary was to be distributed one-half of the corpus of the trust. The decedent's wife and the wife of his son, Ralph G. Spiegle, both died during the year 1925. After their deaths Ralph G. Spiegle and his two young sons came to make their *70 home with the decedent and his daughter Mima in the family home at 136 West Tulpehocken Street, Philadelphia, Pennsylvania. The circumstances surrounding the execution of the aforementioned trust agreement of January 18, 1928, were that the decedent was very fond of his two young grandsons and discussed at times his purpose to make a trust to provide for their maintenance and education. At the time the trust was created the decedent had an estate of approximately one million dollars and his son, Ralph G. Spiegle and his daughter, Mima M. Spiegle, were individuals of considerable wealth. The trust agreement in question by its terms was made subject to amendment or revocation, the decedent stating that he was without personal experience of trusts handled by corporate trustees and wished to see how the trustee handled the trust estate, as he wished to reserve the power to change the trust if not satisfied with its management. On January 13, 1930, the decedent executed an amendment to the aforesaid trust, releasing his power to amend or revoke. Prior to taking this action he had advised his son, Ralph G. Spiegle, that he was satisfied with the management of the trust by the corporate *71 trustee and was confident that the trust would be properly administered. On January 9, 1930, prior to the amendment of the aforesaid trust instrument, decedent phoned an officer of the corporate trustee and inquired as to whether, in the event of his death, the corpus of the trust would be taxable as a part of his estate, and in reply to this inquiry was advised by letter from the trust department, as follows: "Referring to your call today, I have gone further into the matter as to whether or not the corpus of your Deed of Trust would be taxable as part of your estate. "I find that a revocable Deed of Trust, no matter how many years elapse from the date of execution is always subject to the tax, as the Creator of the trust always reserves unto himself the right to take back the securities constituting the trust. As to an irrevocable trust, two years must elapse from the date of execution in order to prove that such transfer was not made in contemplation of death. "If there is any other information you would like along these lines, please do not hesitate to call upon me." At the time of the execution of the aforesaid trust agreement on January 18, 1928, and the time of its *72 amendment on January 13, 1930, and for some years subsequent thereto the decedent, George M. Spiegle, was in good health and actively engaged in carrying on a prosperous business consisting of a lumber business at Philadelphia and two lumber mills at Bristol and Newport, Tennessee. He at times consulted a family physician, but his ailments were not of a serious character and in each instance the trouble cleared up after treatment. The decedent's business was carried on by him in partnership with his son, Ralph G. Spiegle, and his daughter, Mima M. Spiegle, but in 1933 he retired from the business carried on at Philadelphia and at Bristol, Tennessee, these two being taken over by his son, Ralph G. Spiegle. He, together with his daughter, retained the business of the Rhyne Lumber Co. at Newport, Tennessee. Following this, he actively operated the Rhyne Lumber Co. Decedent's son, Ralph G. Spiegle, continued to live with decedent until during 1935. Since 1933 the decedent had begun to exhibit forgetfulness with respect to matters and became irritable and unreasoning, and finally in 1935 his son, Ralph G. Spiegle, found it necessary to leave the home. Although the decedent after this *73 time continued to manage the business of the Rhyne Lumber Co. in Newport, Tennessee, his mental condition deteriorated until finally in 1939 it became necessary to appoint his son, Ralph G. Spiegle, as his guardian and have him confined in a mental hospital. None of the income of the aforementioned trust created by decedent for his two grandsons was ever expended by the trustee for their maintenance and education but was all accumulated and invested for their account. The elder one of the two beneficiaries became of age prior to the death of the decedent, and at that time an audit was made by the trustee of the accumulation of income and an account set up under which one half of such accumulation was held subject to his withdrawal upon his request. The decedent's wife had requested him to give the home place on West Tulpehocken Street to their daughter Mima, as the daughter had managed the household and had an affection for the place, and the decedent had promised his wife that he would do so. On August 27, 1936, the decedent executed a formal deed of the property at 136 West Tulpehocken Street to his daughter, Mima M. Spiegle. In July 1939, after the appointment of a guardian *74 for the decedent, his daughter, Mima M. Spiegle, brought the executed deed to the premises on West Tulpehocken Street to her bankers, Brown Brothers, Harriman & Company of Philadelphia, Pennsylvania, advising them that she had kept it for several years in her safe deposit box without recording it, as she didn't wish her father to feel that he was living in her house but rather she was living with him. This deed was thereupon taken and recorded for her by her bankers. Subsequently, on July 17, 1942, Mima M. Spiegle sold this property to her brother Ralph G. Spiegle, for a consideration of $12,000 paid by him. The execution by decedent of the trust deed of January 18, 1928, was not done by decedent in contemplation of death, and the amendment of that deed by decedent on January 13, 1930, was not in contemplation of death. The conveyance by decedent of the premises at 136 Tulpehocken Street, Philadelphia, Pennsylvania, to his daughter, Mima M. Spiegle, in 1936 was not a conveyance made in contemplation of death or to take effect in possession or enjoyment at or after death. Opinion Respondent's contention is that the conveyance in trust by the decedent for the support and education *75 of his two small grandsons, made 17 years prior to his death, was in contemplation of death and, consequently, the value of the corpus of the trust as of his death was includible in his gross estate under section 811 (c), Internal Revenue Code. The question is one of fact and the rule is clear that if the dominant or impelling motive of the decedent in making this transfer was associated with death or prompted by the thought of death, such transfer comes within the statutory provision. United States v. Wells, 283 U.S. 102; Estate of Oliver Johnson, 10 T.C. 680. The burden of proof in determining this question rests upon the petitioner. McGrew's Estate v. Commissioner, 135 Fed. (2d) 158. Upon the record we have found that the conveyance in trust by the decedent, on January 18, 1928, was not made in contemplation of death. The facts and circumstances surrounding the execution of this trust agreement, together with its terms and conditions, leaves us in no doubt as to the correctness of our conclusion. Respondent points to the fact that the decedent in 1925 lost both his wife and his daughter-in-law, the mother of the *76 two young grandsons who were beneficiaries of the trust. There is no indication, however, that the decedent was of a morbid character. Undoubtedly the loss of his wife and daughter-in-law was a blow to him but decedent is shown to have been an active, intelligent, successful business man in good health at the time of the creation of the trust, and we cannot take the fact that he had two years prior to this time suffered a loss to indicate that his impelling motive in an act looking toward the welfare of his two young grandsons was taken with his death in mind and to provide against contingencies that might exist in such event affecting them. In fact, the express purpose of the transfer was to assure the maintenance and education of the beneficiaries who were small children. The conditions of the trust were such as to guarantee this purpose. The amount conveyed represented only approximately 10 per cent of the decedent's estate. At the time of the execution of the trust the existing conditions were not such as to indicate any danger to the two beneficiaries which would come about through decedent's death. He was a very wealthy man, his son, the father of the children, was also a wealthy *77 man, and decedent's daughter, who made her home with the family, was a wealthy woman. The deaths of all three of these parties would not have entailed a danger to the children in the way of a lack of funds for their support and education. In fact, none of the income of the trust property was ever used for the support of the beneficiaries during their minority. The provisions of the trust were that the trustee should expend, under direction of the grantor or the father and aunt of the beneficiaries, such part of the income of the trust corpus as was necessary for their maintenance and education, income unexpended to be accumulated. Upon each one of the beneficiaries becoming 21 years of age, any accumulated income upon his one half interest in the corpus was to be distributed to him, and on each one becoming 25 years of age he was to receive a distribution of his one half of the corpus. This provision guaranteed that these two small grandsons of the decedent would be assured support and education and upon reaching manhood and completing their education, would have a capital of $50,000. This does not appear to be an arrangement made contemplating the death of the decedent. It is more *78 reasonably to be considered as a guarantee established by the decedent against the loss by him and his son and daughter of the very large fortune which they possessed. It must be remembered that the decedent and his son and daughter were carrying on a large and active business in partnership and that their personal fortunes were all subjected to the risks of that business. Decedent by his action took out from under such risk an amount sufficient to guarantee the maintenance and education of his grandsons no matter what financial loss might occur with respect to him or his son and daughter. It appears to us that the reasonable conclusion is that his dominant motive was to provide, not against any contingency of his death, but the possibility of financial losses. Respondent's further contention is that even though it be held that decedent in making this transfer in 1928 had no thought of his death in mind, the transfer was one subject of revocation, and that his release of the power to revoke made two years later was for the purpose of minimizing estate tax, this purpose being one associated with death and accordingly in contemplation of death within the purview of the above cited *79 section. It is clear under the authorities that if the decedent's motive in releasing his power to revoke was for the purpose of minimizing estate tax, the trust corpus would be includible in his gross estate as a transfer in contemplation of death. Commonwealth Trust Co. v. Driscoll, 50 Fed. Supp. 949, affd. 137 Fed. (2d) 653, certiorari denied 321 U.S. 764; Estate of Frank A. Vanderlip, 3 T.C. 358, affd. 155 Fed. (2d) 152, certiorari denied 329 U.S. 728. The petitioner contends that the situation here is comparable to that existing in Allen v. Trust Co. of Georgia, 326 U.S. 630. In that case the decedent transferred under revocable trust in favor of his children certain properties and subsequent to such transfer a change in the law included the value of the corpus of a trust of such character in the gross estate of the grantor. Thereupon the decedent revoked the power to amend, and the Supreme Court held that his dominant motive was not to avoid estate tax but to further his original intention that the estate conveyed in trust inure to the benefit of his children without diminution. *80 Respondent seeks to differentiate the Allen case on the ground that the decedent there was a lawyer who understood the law, and that there was a change in the law itself subjecting the transferred estate to the chance of diminution by reason of estate tax, whereas in the present case the law was unchanged. In support of this respondent calls attention to the fact that several days prior to the amendment of the trust here in question to release the power of revocation, the decedent inquired of the trust company as to whether or not, in case of his death, the corpus of the trust would be subject to estate tax, and upon being advised that it would be he ordered the necessary amendment to be drafted. It is inferred that under these circumstances decedent must have been endeavoring by this action to lessen the amount of the estate tax. We cannot agree with respondent's conclusion. The decedent was not a lawyer. His inquiry to the trust company appears to have been by reason of the fact that he had received some indication from some source that a revocable trust might on his death be subject to tax by the Federal Government. The answer to his inquiry by the trust officer was, to say the *81 least, unfortunately phrased, as it advises him that the corpus of the trust would be on his death "taxable as part of your estate." This of course was incorrect. The value of the corpus would be included for purposes of computing tax payable by the decedent's estate, but only in the event of the insolvency of the estate would the corpus of the trust be diminished by Federal tax. However, to a layman it appears that the normal meaning of the advice received was that in the event of his death the fund definitely intended to be set aside for the support and education of his grandsons would be subjected to tax and diminished in amount. Under such circumstances we think that it is a much more reasonable conclusion that his action in releasing his power of revocation was induced not by the thought of minimizing his estate taxes but, as in the Allen case, a desire to protect the corpus of the trust and see that his original intention in its creation was carried out. We have accordingly found that his action in releasing the power to revoke or amend was not with the purpose of minimizing estate tax and accordingly was not an action taken in contemplation of death. The remaining issue is *82 upon respondent's action in including in the gross estate the value of the family home conveyed by deed by decedent to his daughter Mima. The record shows that this conveyance was made long prior to his death and in accordance with a promise that he had made his wife. In fact, the property in question was sold by the daughter prior to his death. We find in the facts respecting this conveyance nothing to indicate that it was made in contemplation of death or intended to take effect in possession or enjoyment at or after death. Having sustained the petitioner under issues (a) and (c), issue (b) becomes moot and need not be discussed. In view of the fact that certain expenses of administration not yet allowed in the computation of the estate tax are agreed by respondent to be allowable, Decision will be entered under Rule 50.