ESTATE OF MARY E. SPRAGUE, Deceased, DOROTHY S. BEAL, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sprague v. Commissioner
Docket No. 7844-72.
United States Tax Court
T.C. Memo 1974-173; 1974 Tax Ct. Memo LEXIS 147; 33 T.C.M. (CCH) 743; T.C.M. (RIA) 74173; June 26, 1974, Filed. *147 Decednet transferred a farm to her daughter five months prior to decedent's death. Held, the value of the farm is not includable in decedent's gross estate as a gift in contemplation of death under sec. 2035, I.R.C. 1954. Daniel J. Duffy, for the petitioner. Edward J. Roepsch, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in estate tax in the amount of $5,464.37. The issues are: 1. Whether *148 the value of a farm transferred by the decedent five months prior to her death is includable in decedent's gross estate as a gift "in contemplation of death" under section 2035; [1] 2. Whether the farm is to be valued as of the date of death or the alternate valuation date; and 3. The value of the farm on the appropriate date if its value is includable in decedent's gross estate. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Mary E. Sprague (hereinafter referred to as decedent) died testate on March 1, 1969, at the age of 92. Her will was admitted to probate by the County Court of Couglas County, Nebraska, on April 14, 1969. Dorothy S. Beal (hereinafter referred to as petitioner) is the duly appointed and acting executrix of decedent's estate. She is also decedent's only surviving child. A Federal estate tax return for decedent's estate was filed by petitioner with the district director of internal revenue at Omaha, Nebraska. The estate elected to use the alternate valuation date, March 1, 1970. *149 No Federal gift tax return has been filed by decedent or her estate. Petitioner maintained her legal residence in Diamond City, Arkansas, at the time the petition was filed in this case. Decedent's will was executed on July 20, 1967. On the same date, decedent established a trust in which she could place her property for professional management. She intended, at that time, to continue to manage her property with her daughter's assistance. Her stated purpose for setting up the trust was to have professional management available to relieve herself of the responsibility if her daughter could no longer assist her. Decedent made a gift of $1,000 to her granddaughter on January 30, 1967, and again on April 10, 1968. She gave her grandson $1,000 on January 24, 1969. After trial, respondent conceded that these gifts were not made in contemplation of death. Decedent owned a farm located in Merrick County, Nebraska, which she had acquired in 1934 by inheritance from her mother. Decedent transferred this farm to petitioner on October 1, 1968, in return for the consideration of "love and affection." Decedent was then 91 years old and was living with petitioner in Millard, Nebraska. *150 Decedent retained mutual fund stocks and utility company stocks valued at $71,752.24 as of the date of her death. The value of the farm is in dispute with petitioner alleging $24,000 and respondent $34,000. Since 1955 the farm was operated by a tenant farmer, Ronald Glasser. Decedent provided the land, paid the taxes and paid one-half of the expenses. Mr. Glasser provided labor, machinery and fuel. The crops were divided on a 50-50 basis. Decedent was active in fulfilling her responsibilities concerning the farm. She had to decide whether to plant crops or to place the land in the soil bank program. She then assisted Mr. Glasser in deciding what particular crop to plant. She was responsible to decide how much fertilizer to use and whether to spade for weeds or not. She made periodic visits to the farm primarily to inspect the crops. Prior to harvest she had to decide whether to sell her share of the crop or whether to store it. In the fall, prior to harvest, Mr. Glasser would contact decedent to obtain her decision on whether to sell or store her share of the crop. After his call in the fall of 1968, decedent expressed her dissatisfaction with managing the farm and *151 stated that she intended to give the farm to petitioner to relieve herself of the burden. In a letter written to petitioner on September 25, 1968, [2] decedent indicated that she intended to give the farm to petitioner in order to give petitioner an opportunity to learn how to manage it and relieve decedent of the responsibility. The record contains evidence regarding decedent's health beginning in 1963 until her death in 1969. During this period decedent consulted a podiatrist, a periodontist, an oral surgeon, an ophthalmologist, an internist and a general practitioner. She underwent surgery for the removal of a cataract and for extraction of her teeth. She was diagnosed as having hypertension, vertigo, osteoporosis and arteriosclerosis. She wore corrective lenses, a hearing aid, and false teeth. All of her physicians indicated that she responded well to treatment and that none of her ailments were considered terminal or serious. Decedent was admitted to the hospital on three occasions prior to the date of *152 the gift in question. She went to the hospital on February 7, 1967, with a broken pelvis caused by a fall. An electrocardiogram taken on February 7, 1967, indicates a "probable old posterior infarction" (heart attack). She was hospitalized again on August 17, 1967, after spraining her back in a fall. She entered the hospital for the third time on July 24, 1968, complaining of dizziness and nausea and appearing slightly confused. Her physician diagnosed her condition as arteriosclerosis, a condition which he did not consider serious nor uncommon for her age. She was released on July 27, 1968, with her physician reporting "A rapid return to normal condition for age."
Following the transfer of the farm, decedent entered the hospital on November 13, 1968, to have her teeth extracted. She was again admitted to the hospital on February 11, 1969, with cracked ribs sustained in a fall. On February 19, 1969, while still in the hospital, decedent suffered a cerebrovascular accident (rupture or blockage of a vessel) which resulted in her death on March 1, 1969. OPINION The issues are: (1) Whether the value of a farm transferred by the decedent to her daughter five months prior *153 to her death is includable in decedent's gross estate as a gift "in contemplation of death" under section 2035; (2) Whether the farm is to be valued as of the date of death or the alternate valuation date; and (3) The value of the farm on the proper date if the farm is includable in decedent's gross estate. Section 2035(a)[3] provides for including in a decedent's gross estate the value of any property transferred in contemplation of death. Under section 2035(b)[4] any transfer (other than one for adequate consideration) made by the decedent within the three-year period preceding his death is deemed to be in contemplation of death, unless the estate establishes otherwise. *154 In determining whether petitioner has met the burden of establishing that the transfer was not in contemplation of death we are guided by the principles set out in United States v. Wells, 283 U.S. 102, 116, 117, 118, 119 (1931) as follows: It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. * * * The dominant purpose is to reach substitutes for testamentary dispositions and thus to prevent the evasion of the estate tax.* * * If it is the thought of death, as a controlling motive prompting the disposition of property, that affords the test, it follows that the statute does not embrace gifts inter vivos which spring from a different motive. * * * There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus give effect to the manifest purpose of the statute. The Tax Court has set out a list of circumstances to be considered and weighed in determining decedent's dominant motive for making the transfer. Estate of Oliver Johnson, 10 T.C. 680, 688 (1948). *155 Although we have considered these factors in reaching a decision we need not repeat them all here. In the instant case, some of these circumstances are favorable to petitioner's position and some are favorable to respondent's contention. Let us examine some of these items. The first item to be considered is the decedent's age at the time of the transfer in question. It is clear that old age alone does not provide a decisive test. United States v. Wells, supra at 118. Age must be considered but in the light of decedent's health and any motive for the transfer which is associated with life rather than death. Kniskern v. United States, 232 F. Supp. 7 (S.D. Fla. 1964). Decedent was in reasonably good health for her age and there is nothing to indicate that she was preoccupied with her health. The Supreme Court in Wells stated that the existence of "a condition of body or mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership" is of great importance in determining whether the gift was made in contemplation of death. United States v. Wells, supra at 117. *156 We find that no such condition existed in the body or the mind of decedent at the time of the transfer in question. It is true that decedent had various ailments as set out in the findings of fact. It is also true that her physicians described her ailments as "not serious" and "not inconsistent with her age." She responded well to treatment for these ailments and none of them were considered terminal by her physicians. Medical tests taken in February 1967 indicate that decedent may have had a heart attack at some point previous to that time. None of her physicians treated her for a heart condition until February 19, 1969, just prior to her death. Even if decedent did have a heart attack, the record discloses that she was not aware of it. Hospital admission's records dated February 11, 1969, reveal that decedent told the admitting physician that she had "no known heart trouble." It is decedent's health as she knew it that is important, for if she had a condition of which she was not aware, it could not have been a motivating factor in her decision to make the transfer in question. The decedent's health, as she knew it, was certainly better than the health of the decedent *157 in Wells. In that case the court held that motives associated with life overshadowed the fact that the deceased was 73 years old and had been informed that he had intestinal cancer and colitis.
The two cases cited by respondent in regard to decedent's health are distinguishable from the present case. Estate of Irene Scott Chotin v. United States, 201 Ct. Cl. 882 (1973), certiorari denied 414 U.S. 1130 (1974); Estate of Robert W. Hite, Sr., 49 T.C. 580 (1968). The decedent in Chotin knew that she had a serious heart condition. She had suffered from heart fibrillation, heart palpitation and aneurysmal dilation of the abdominal aorta on at least six occasions. The decedent in Hite was totally bedridden and had been hospitalized nine times for such things as pneumonia, heart attacks, cerebrovascular accident, cystitis, arteriosclerosis and a cerebral hemorrhage. Clearly the health of decedent in the present case cannot be compared to the health of the decedents in Chotin and Hite. Decedent had a lifetime motive for making the transfer. The farm had become a burden to her and she desired to be relieved of the burden. Prior to making the gift *158 she was active in the management of the farm. She visited the farm periodically to inspect the crops and was responsible for providing certain supplies for the farming operations. It was necessary for her to make certain decisions regarding the farm operations, all of which could have great bearing on the financial success of the farm. The evidence is most convincing in regard to decedent's desire to escape the burdens incident to the management of the farm. Decedent expressed a desire to be relieved of the management burden on several occasions. The trust set up in 1967 and the letter attached thereto indicate that the purpose of the trust was to provide for professional management of the farm in the event decedent's daughter could no longer assist in managing it. In the fall of 1968 she orally expressed a desire to give the farm to her daughter in order to be relieved of the management burden. The same desire was expressed again in a letter to her daughter on September 25, 1968. It is clear that the desire to be relieved of the burden of management is a motive associated with life, rather that death. John K. Broderick, Executor, 38 B.T.A. 1421 (1938). If a transfer *159 is motivated by factors associated with life, rather than death, it is not made in contemplation of death. Section 20.2035-1(c), Estate Tax Regs. The case of Berman v. United States, 487 F.2d 70 (C.A. 5, 1973), cited by the respondent is distinguishable in that the court in Berman expressly found no motive associated with life. The amount and type of property retained by decedent after the transfer sheds light on her motive for the transfer. Even if we accept respondent's valuation of the farm, it is clear that decedent retained approximately two-thirds of her property. This fact indicates that she was not attempting to divest herself of the bulk of her estate in order to avoid a testamentary disposition. Also the property retained by decedent consisted mainly of mutual fund and utility company stocks which are rather stable investments requiring little management. This fact supports our conclusion that decedent was attempting to divest herself of that portion of her property which had become a burden to her, namely, the farm. We conclude that decedent was in reasonably good health and that she was not motivated by the thought of death or a desire to avoid estate *160 taxes. Her dominant motive for making the transfer was a motive associated with life rather than death. We therefore conclude from a consideration of all the evidence in the instant case that petitioner has overcome the presumption of correctness of the respondent's determination and that the transfer of the farm was not made by decedent in contemplation of death within the meaning of section 2035 of the Code. Since we have concluded that the value of the farm is not includable in decedent's gross estate, we need not decide the appropriate valuation date nor the value on the appropriate date. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise indicated. ↩
2. The letter was dated "1958"; however, testimony at trial established that decedent intended to write "1968" and that the letter was actually written in 1968. ↩
3. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) General Rule. - The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. ↩
4. (b) Application of General Rule. - If the decedent within a period of 3 years ending with the date of his death * * * transferred an interest in property * * * such transfer * * * shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section * * *. ↩