ESTATE OF FREDERICK E. HUMMEL, DECEASED, VIRGINIA NATIONAL BANK/RICHMOND (FORMERLY VIRGINIA TRUST CO.), EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hummel v. Commissioner
Docket No. 11560-77.
United States Tax Court
T.C. Memo 1979-283; 1979 Tax Ct. Memo LEXIS 243; 38 T.C.M. (CCH) 1101; T.C.M. (RIA) 79283; July 26, 1979, Filed Frank W. Hardy, for the petitioner. Stephen M. Friedberg, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency of $11,901.60 in petitioner's Federal estate tax. Due to concessions by petitioner, the only issue for decision is whether an inter vivos transfer of $50,000 in trust by decedent to provide for the education of his great grandson was made in contemplation of death within the meaning of section 2035. [1]
Petitioner claims an overpayment under section 6512(b) based upon additional administrative expenses incurred in connection with this litigation which are allowable as deductions under section 2053. The exact amount of its additional legal fees *245 and expenses will be determined at the conclusion of this proceeding. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Decedent, Frederick E. Hummel, died testate on May 26, 1975, a resident of Richmond, Virginia. The Virginia National Bank/Richmond, a corporation with its principal office in Richmond, Virginia on the date the petition was filed herein, is the duly appointed and acting executor of the estate. Petitioner filed the Federal estate tax return for decedent's estate with the Internal Revenue Service Center at Memphis, Tennessee, on February 26, 1976. At the time of his death, decedent was 78 years of age. He was survived by his wife, Maria Jones Hummel, who subsequently died on December 9, 1976. Decedent's only child, a son, had been killed in an airplane accident in 1952 while serving as a pilot in the United States Air Force. The son had been married and there was one child of the marriage, a girl. The son's marriage was terminated by divorce. The sole surviving lineal descendants of decedent were his granddaughter and her son, Fred Hummel Link. Decedent's great grandson was born in 1973, and was approximately two and one-half *246 years old when decedent died. In the years immediately preceding his death, decedent and his wife had been estranged from their granddaughter. Decedent did not agree with his granddaughter's life-style and felt disaffection for her spouse. On October 10, 1972, decedent gave the Virginia National Bank/Richmond (formerly the Virginia Trust Company), the executor of his estate, custody of all his assets. Prior to that date, decedent's securities were handled by his bank merely in a safekeeping capacity. On November 1, 1972, decedent executed his will. Under the terms of the will, decedent's wife, if she survived him, was to receive decedent's real property and all of his tangible personal property. In the event decedent's wife predeceased him, decedent's tangible personal property was left to his wife's nephew, niece and great niece, and decedent's granddaughter, who was to receive three family portraits. Under the will, the bulk of decedent's estate was to be placed in trust. The trust provisions utilized the typical marital and residuary trusts designed to maximize the Federal estate tax marital deduction. The distributees of the residuary portion of decedent's estate *247 as life tenants were J. Powell Watson and Mary Watson Gomez, the nephew and great niece, respectively, of decedent's wife. Designated as distributees of the remainder of the residuary portion were the issue of Mary Watson Gomez. No provision was made in the decedent's will for his great grandson who was born in 1973, after execution of the wil. Moreover, none of decedent's property, nor any of his wife's property, ever passed to either granddaughter or great grandson. By an agreement dated April 8, 1975, decedent caused a gift of $50,000 to be placed in an irrevocable trust to provide for the education of his great grandson. Under the terms of this trust, the trustee was directed to expend so much of the net income and principal of the Trust Fund as may be necessary for [the great grandson's] education including, but not limited to, education at the postgraduate level if he desires to pursue such education. Any income not so paid or expended shall be added to the principal * * *. The trust further provided that the corpus was to be distributed to the great grandson when he became 25 years of age, or to his estate upon his death prior to age 25. On April 28, 1975, $50,000 *248 in cash was transferred from decedent's custodial account to a trust account pursuant to the April 8, 1975 agreement. As a result of this transfer to fund the educational trust for his great grandson, a gift tax return was filed on behalf of decedent on January 15, 1976. The decedent had never filed a gift tax return prior to this return. Decedent began to consider providing for his great grandson's education no later than the latter part of 1974. In February 1975, while vacationing in Florida, decedent consulted with his banker regarding the cost of a college preparatory and a college education. He then instructed the banker to make the necessary arrangements for the $50,000 transfer, which included drafting of the trust agreement by decedent's attorney. In providing for his great grandson's education, decedent was motivated, at least in part, by his great interest in the Episcopal High School (Episcopal), a college preparatory school located in Alexandria, Virginia which decedent's only son had attended. This interest in Episcopal was emphatically exhibited in 1969 when decedent made an inter vivos irrevocable lump sum transfer of securities valued in excess of $3,500,000 *249 to the school in memory of his son. In addition, at decedent's request, his banker in 1975 made arrangements with Episcopal officials to place decedent's great grandson's name on the school's waiting list of future students. For many years prior to his death, decedent had been in exceedingly poor health, and was hospitalized on numerous occasions with very serious ailments. Quite simply, his health had been atrocious but treatment had generally been successful. On at least three occasions during the early 1970's, decedent had required treatment for gastrointestinal bleeding due to a peptic ulcer. The latter two recurrences of this ailment, in July 1972 and March 1974, did not require hospitalization. in October and November of 1973, decedent suffered from a cerebro-vascular accident with resulting impairment of speech and tongue. Treatment of this problem did not require hospitalization, and there was a gradual clearing of the impairments. Decedent was also treated at home during May 1974 for congestive heart failure due to arteriosclerotic heart disease. Decedent entered Stuart Circle Hospital in Richmond, Virginia on April 18, 1975 and died May 26, 1975 from a left hemiplegia *250 due to thrombosis of a cerebral artery. In addition, decedent suffered from an old right hemiplegia, arteriosclerotic heart disease with chronic auricular fibrillation and an undiagnosed lesion in the left lung. During this period of hospitalization, recovery from paralysis was minimal, decedent had a poor memory, spoke with difficulty, developed dysphagia, and was confused at times. On Schedule G of the decedent's Federal estate tax return, the 1975 transfer of $50,000 in trust to provide for his great grandson's education was reported as a transfer during decedent's life, but was not included in the gross estate. The return as filed reflected a gross estate of approximately 6.7 million dollars, on which a net Federal estate tax of approximately 1.17 million dollars was paid. In addition, decedent's adjusted gross income for the calendar year 1974 was approximately $254,000. Respondent determined that the 1975 transfer in trust was a gift in contemplation of death and was therefore includible in decedent's gross estate under section 2035. OPINION Shortly before his death, the decedent transferred $50,000 in trust to provide for the education of his great grandson. Respondent *251 determined that the $50,000 transfer was a gift made in contemplation of death and, therefore, includable in decedent's gross estate under section 2035. Section 2035(a) [2] provides in general that a decedent's gross estate shall include the value of all property transferred by such decedent in contemplation of death. Section 2035(b) provides that a transfer within 3 years of a decedent's death, unless shown to the contrary, will be deemed to have been made in contemplation of death. Because the transfer here in question occurred within 3 years of decedent's death, the provisions of section 2035(b) place the burden on petitioner to dispel the presumption that the transfer was made in contemplation of death. *252 Section 20.2035-1(c), Income Tax Regs., provides that the phrase "in contemplation of death"-- [Does] not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with the purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition. See United States v. Wells,283 U.S. 102 (1931); Allen v. Trust Co. of Georgia,326 U.S. 630 (1946). The issue is by its nature essentially a question of fact requiring an examination of all relevant evidence surrounding the transfer. This inquiry must be focused on determining decedent's *253 dominant motive at the time the transfer was made. [3]United States v. Wells,supra. Petitioner's burden therefore is to establish by a preponderance of the evidence that the motives prompting the questioned transfers were not "associated with death." Section 20.2035-1(c), Income Tax Regs.
Upon consideration of all the relevant facts, we find that the $50,000 gift in trust was made by the decedent in contemplation of death. Our conclusion is based in part on *254 decedent's deteriorating health. In the 20 years prior to his death at the age of 78, decedent was afflicted with numerous medical disorders, including an ulcer, a serious liver aliment, heart disease, and a stroke. While there is some evidence that he had substantially recovered from some of these infirmities, the record also discloses that he was in full possession of his mental faculties and was cognizant of his health problems. In sum, decedent was chronically ill and was aware of that fact, as well as the fact that he was growing old. Our conclusion is also influenced by the nature of the transfer and its proximity to decedent's death. The transfer in trust was made approximately 1 month before decedent's death, while he was in the hospital. The idea for the transfer originated a couple of months earlier. The purpose of the transfer was clear: to provide for the education of decedent's great grandson, with the expectation that he would be enrolled at Episcopal High School. However, since the child was only 2-1/2 years old at the time of the transfer, he would receive none of the intended benefit from the gift for over 10 years. Moreover, under the circumstances--the *255 child was decedent's only great grandchild and was named after decedents view the child as the natural object of decedent's bounty, despite decedent's estrangement from the child's mother. The inference from these facts is that the inter vivos transfer was a substitute for a testamentary disposition of the property, structured in this manner in part because the child was born subsequent to the execution of decedent's will. Thus, the transfer is includable in decedent's gross estate. Petitioner argues that decedent's gift was made with the life motive of providing for the education of his great grandson. Furthermore, petitioner maintains that because the gift represented only a minute portion of the reported gross estate (0.7 percent of the gross estate) and a small percentage of decedent's annual adjusted gross income (roughly 20 percent of adjusted gross income), decedent entertained no intent to avoid estate tax and also lacked the motive of making a substitute for a testamentary disposition. We think petitioner places too much weight on the relative size of the transfer in determining decedent's motive. Initially, petitioner maintains that the motive to avoid estate tax was *256 absent, an assertion based primarily upon the relative size of the transfer. It then urges that the absence of such tax avoidance motive is the principal factor in determining that a transfer was not made in contemplation of death. Although in this case the avoidance of estate tax motive is insignificant or not present, we are unable to conclude that the absence of this factor is determinative of the question. Implicit in the structure of the definition of the phrase "in contemplation of death" contained in the regulations, supra, is the conclusion that the tax avoidance criterion is only one of three separate criteria for determining whether a transfer was prompted by the thought of death. See Lowndes, Kramer and McCord, Federal Estate and Gift Taxes, pp. 71-74 (3d. ed. 1974). Petitioner next argues that the relative size of the transfer is a most important factor in determining whether the transfer was a substitute for a testamentary bequest. In so arguing, petitioner relies on two cases in support of this argument. See Estate of Selling v. Commissioner,24 T.C. 191 (1955); Estate of Johnson v. Commissioner,10 T.C. 680 (1948). These *257 cases are not as persuasive as petitioner suggests. In neither of these cases is the factor of the size of transfer accorded nearly the significance ascribed to it by petitioner in this case. Moreover, in each of the cases cited, the donee was favored with a present benefit from the transfer, a factor whose absence we consider important here. [4]
Finally, petitioner submits that the $50,000 transfer was wholly unrelated to the though of death because of the existence of a life motive, i.e., providing for the education of decedent's great grandson. We disagree with the factual premise for this argument. In *258 our view, the decedent's declining health; the making of the gift at about the time of his death (indeed petitioner was in the hospital for his last illness when the actual transfer of cash occurred); and the fact that the donee would in no way benefit from the transfer for over 10 years negates any inference that the educational purpose was a life motive. While the case is a close, one, petitioner's evidence is simply insufficient to overcome the presumption created by section 2035(a) that the transfer in trust was made in contemplation of death. Accordingly, we sustain respondent's determination that the $50,000 must be included in decedent's gross estate under section 2035(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect at the time of decedent's death.↩
2. SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH. (a) GENERAL RULE.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death. (b) APPLICATION OF GENERAL RULE.--If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment); but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. The problem involved in the instant case has largely been mooted by the Tax Reform Act of 1976. See Pub. L. 94-455, sec. 2001(a)(5), 90 Stat. 1520, 1848.↩
3. In arriving at the factual conclusion, consideration must be given to such factors as the nature of the gift itself, particularly as compared to prior gifts, the relationship of the donee to the decedent, the size of the gift as compared with the total wealth of the decedent, the association with testamentary acts such as preparation of a will or consideration of a new will made at approximately the time of the gift, the general health of the decedent at the time the gift was made, the motives for the gift which are or might be connected with life, and the prominence of such motives in influencing the making of the gift. See Estate of Johnson v. Commissioner,10 T.C. 680↩ (1948).
4. Petitioner also relies on four other cases which it claims emphasize the importance of the relative size of the transfer in determining the decedent's motive. See Estate of Beachy v. Commissioner,15 T.C. 136, 142 (1950); Estate of Spiegle v. Commissioner, a Memorandum Opinion of this Court dated October 16, 1952; Kniskern v. United States,232 F.Supp. 7 (S.D. Fla. 1964); and Estate of Sheldon v. Commissioner,27 T.C. 194↩ (1956). Each of these cases is distinguishable on its facts, and therefore inapposite herein.